

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-1995

# DeBlasio v Zoning Board

Precedential or Non-Precedential:

Docket 93-5301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"DeBlasio v Zoning Board" (1995). *1995 Decisions.* Paper 115.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/115

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-5301

_____

ALFRED DEBLASIO,

Appellant,

vs.

ZONING BOARD OF ADJUSTMENT FOR THE TOWNSHIP
OF WEST AMWELL; HARRY K. RUSH; RAYMOND G.
LINDBLAD; CHARLES A. BRITTON; GARY W.
BLEACHER; DAVID L. DONDERO; STEWART
PALILONIS; ROBERT FULPER, JR.; WERNER J.
HOFF; EUGENE J. VENETTONE; BARBARA GILL;
JOSEPH HELEWA; JAMES LAVAN; MRS. JAMES LAVAN,

Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 92-00926)

_____

ARGUED MARCH 10, 1994

BEFORE: MANSMANN and LEWIS, Circuit Judges,
and McKELVIE, District Judge.[*]

(Filed   May 1 , 1995)

_____

_____

[*]     Honorable Roderick R. McKelvie, United States District
Judge for the District of Delaware, sitting by designation.

Nicholas R. Perrella (ARGUED)
Smith & Laquercia
28 West State Street
Suite 1414
Trenton, NJ  08608

    Attorney for Appellant


Mark L. First (ARGUED)
Fox, Rothschild, O'Brien & Frankel
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ  08648-2311

    Attorney for Appellees, Zoning Board of
    Adjustment for the Township of West Amwell,
    Harry K. Rush, Raymond G. Lindblad, Charles
    A. Britton, Gary W. Bleacher, David L.
    Dondero, Stewart Palilonis, Robert Fulper,
    Jr., Werner J. Hoff, Eugene J. Venettone,
    Barbara Gill and Joseph Helewa


Ivan C. Bash (ARGUED)
Brotman & Graziano
3685 Quakerbridge Road
Post Office Box 3333
Trenton, NJ  08619

    Attorney for Appellees, James Lavan and Mrs.
    James Lavan

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

This case raises important questions regarding the extent to which the due process clause of the Fourteenth Amendment may serve to protect landowners against arbitrary governmental regulation of land use.  We conclude that in the

context of land use regulation, a property owner states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.  Here, the plaintiff, Alfred DeBlasio, did so allege; however, the district court determined on summary judgment that he had failed to present sufficient evidence that the governmental decision in question was arbitrary or irrational.  We conclude that DeBlasio has presented sufficient evidence to survive summary judgment in connection with his substantive due process claim.

Appellant Alfred DeBlasio brought suit against the Zoning Board of Adjustment for the Township of West Amwell ("ZBA"), its individual members, Eugene Venettone, the Building and Zoning Official for the Township of West Amwell, the ZBA attorney, and James and Virginia Lavan, Alfred DeBlasio's neighbors, claiming violations of 42 U.S.C. §§ 1983 and 1985(3) and the commerce clause, as well as tortious interference with contractual relations and prospective economic advantage under New Jersey common law.  This is an appeal from the district court's granting of the defendants' motion for summary judgment.  DeBlasio also appeals the district court's denial of his motion for leave to file a second amended complaint, and the district court's affirmance of the order of the magistrate judge prohibiting DeBlasio from questioning the members of the ZBA concerning the mental processes used by each to rule on DeBlasio's variance application.

We will affirm the district court's grant of summary judgment with respect to DeBlasio's section 1983 procedural due process and unlawful taking claims, as well as DeBlasio's claims under section 1985(3) and the commerce clause. We will also affirm the district court's denial of DeBlasio's motion for leave to file a second amended complaint, as well as the district court's affirmance of the magistrate judge's discovery order. Finally, we will affirm the district court's grant of summary judgment in favor of the Lavans. However, we will reverse the district court's grant of summary judgment with respect to DeBlasio's section 1983 substantive due process claim and state law tort claims against the ZBA defendants.

I.

DeBlasio owns property in West Amwell Township, New Jersey, upon which a Quonset hut had been constructed.[1] Previous owners had used the property, and the Quonset hut, as the site of an auto body repair business.

In the mid-1960s West Amwell enacted a zoning ordinance, pursuant to which the future DeBlasio property was designated R-3, which signifies 3-acre minimum residential use. Since the property was, at that time, being used as the site of an auto body repair business, it was not in compliance with the newly-enacted zoning restrictions. Its owners were permitted to continue their auto body repair business, however, because the

---

[1]. A Quonset hut is a semicylindrical metal shelter with end walls, usually serving as a barracks or storage shed. See The Random House College Dictionary 1086 (Rev. Ed. 1982).

property received an exemption as a pre-existing nonconforming use, specifically an auto body repair shop.

In 1967 a neighbor filed a complaint with the ZBA challenging the existence of the auto body repair shop, alleging that the pre-existing nonconforming use had been abandoned or unlawfully expanded. The ZBA conducted a hearing and determined that the use had been properly maintained.

DeBlasio purchased the property in 1974. In 1979, he leased the property to Interstate Battery Systems, a small, battery distribution business run by Peter Holmes. Holmes' business grew considerably over the next ten years. By the end of the 1980s, Holmes employed six full-time workers and two part-time workers. The business used five tractor-trailer trucks and distributed 30,000 batteries a year, many more than the 2,000 batteries Holmes distributed in 1979.

To understand the issues this appeal presents, we must add to this background information some additional facts concerning the Secretary of the ZBA, Werner Hoff, and his children.

Werner Hoff's son, John Hoff, also owned property in West Amwell which included a Quonset hut. John Hoff had used this property as the site of an excavation business.

Toward the end of 1988, John Hoff's business was failing. Werner Hoff believed that if John Hoff could secure some additional funds, he would be able to conduct an orderly and profitable liquidation of his assets. Consequently, in early 1989, Werner Hoff and his older son, Werner Hoff, Jr., loaned the

younger Hoff a sum of money.  In exchange, Werner Hoff and Werner Hoff, Jr. received a mortgage on John Hoff's property.  Werner Hoff, Jr.'s investment company, W.E.H. Realty III, paid the monthly maintenance expenses on the property.  Werner Hoff, Sr. acted as Werner Hoff, Jr.'s business agent and handled the day to day management tasks associated with the property.

At some point after 1989, Werner Hoff, Jr. decided to purchase John Hoff's property.  According to Werner Hoff, Sr.'s affidavit, Werner Hoff, Jr. agreed to assume John Hoff's debts, and to take "de facto control" of the property.  Although it is not clear when this "de facto control" occurred, it is clear from the record that the actual sale of the property to Werner Hoff, Jr. took place in December of 1991.

Toward the end of 1988, when John Hoff's business was experiencing financial difficulties, Werner Hoff, Sr. had a brief, unscheduled encounter with Peter Holmes.  According to Holmes' affidavit, in the course of this conversation,

> Mr. Hoff told me that I should consider purchasing or renting his property on Route 31 in West Amwell Township. Mr. Hoff stated that he would sell the Route 31 property to me for $300,000 or, if I did not wish to purchase the property, I could rent it from him.
>
> I told him that the Quonset Hut on that property was smaller than the Quonset Hut on the DeBlasio property, and was too small for my vehicles.
>
> In response, Mr. Hoff represented that the zoning on the Route 31 property was such that I could legally park my vehicles outside.  He told me that I wouldn't have the problems on the Route 31 property that I was having on

the DeBlasio property.  This was a clear reference to the complaints that the township officials had been receiving from the Lavans, who lived across Rock Road from the DeBlasio property.

(Appendix at 249-50).  Holmes did not pursue Hoff's offer, and Hoff did not discuss the subject with Holmes at any time in the future.

In February of 1989, Virginia Lavan, who owned property near the DeBlasio property, filed a "citizen's complaint" regarding Interstate Battery.  Eugene Venettone, the West Amwell Township zoning official, inspected the property and concluded that the Interstate battery operation constituted an expansion of the pre-existing nonconforming use and that the operation was, therefore, in violation of the West Amwell zoning ordinance.

In March, 1990, DeBlasio and Interstate Battery applied to the ZBA for an interpretation of the status of DeBlasio's property.  They also requested a variance, in the event the ZBA decided that Holmes could not continue operating his business without one.

In June, 1990, the ZBA took up the DeBlasio/Interstate petition, among other matters.  Secretary Hoff attended the meeting and recorded the minutes.  However, when the DeBlasio matter came before the ZBA, Mr. Hoff announced that he would not participate in the ZBA's decision.  The ZBA proceeded to find that in issuing the February 1989 citation, Venettone had not adequately identified the particular provision of the zoning ordinance that Interstate had purportedly violated.

Consequently, the ZBA decided, it could not "make a determination" regarding the violation.  (Appendix at 85). DeBlasio and Interstate then withdrew their request for a variance.

In August of 1990, zoning official Venettone issued a new citation to Holmes.  The citation listed "Expansion of the pre-existing, non-conforming use . . ." as the zoning violation.[2] DeBlasio and Interstate filed another notice of appeal of Venettone's decision with the ZBA.  They also requested that if their appeal were to fail, the ZBA consider their submission as a request for a variance.

The ZBA heard the appeal in September of 1990. Secretary Hoff participated in these proceedings, having

---

[2].    According to DeBlasio, Hoff spoke privately with Venettone some time between June 26 and August 7, 1990, and pressed Venettone to issue the second notice of violation.  In his brief, DeBlasio cites to a portion of Venettone's deposition in support of this contention, where Venettone describes a phone conversation he had with Werner Hoff.  The testimony reads:

> [Venettone]:  I called him on the phone about business, and that's when the Interstate Battery thing was being tossed around in the papers, and I would, you know, ask him for information about it, you know, only in his capacity as secretary of the board.
>
> Q:  Did Mr. Hoff ever push you to issue a notice of violation?  When I say "push you," did he ever suggest or recommend to you that you issue a notice of violation to Interstate Battery?
>
> A:  Yes, that he thought they were in violation, as did a lot of people.

(Appendix at 180).

determined that there was no longer an appearance of a conflict now that Werner Hoff, Sr.'s son Werner Hoff, Jr. had announced his decision to purchase John Hoff's West Amwell property. The ZBA voted unanimously to uphold Venettone's decision that Holmes' business operations constituted an unlawful expansion of the nonconforming use. The next month, the ZBA adopted a resolution to that effect.

The ZBA did not take up DeBlasio's request for a variance until the following March. After holding hearings, the ZBA voted against granting the request. Hoff participated fully in these hearings and voted against the variance. In June, 1991, the ZBA adopted a resolution of memorialization denying DeBlasio's request for a use variance. Holmes was given six months to relocate.

This law suit followed. DeBlasio's complaint set forth four counts: (1) violation of 42 U.S.C. § 1983, based on the deprivation of his Fourteenth Amendment rights to substantive and procedural due process and his Fifth Amendment right not to have his property taken without just compensation; (2) violation of 42 U.S.C. § 1985(3) (the civil rights conspiracy statute); (3) tortious interference with contractual relations and prospective economic advantage, under New Jersey common law; and (4) violation of the commerce clause.

The district court granted summary judgment in favor of the defendants. As to DeBlasio's claims under section 1983, the district court held that DeBlasio's allegations of violations of procedural due process, substantive due process and unlawful

taking failed to rise to the level of constitutional violations. The district court further concluded that DeBlasio failed to allege that he was part of any protected class which would bring him under the protection of section 1985. With respect to DeBlasio's tort claims under New Jersey common law, the district court held that DeBlasio failed to comply with the notice provision contained in the New Jersey Tort Claims Act. Finally, with regard to DeBlasio's claims under the commerce clause, the district court held that DeBlasio failed to establish any evidence of a burden on interstate commerce.

## II.

Subject matter jurisdiction in the district court was predicated on 28 U.S.C. §§ 1331, 1343 and 1367. We have jurisdiction over this appeal under 28 U.S.C. § 1291. Since this is an appeal from a district court's granting of summary judgment, we exercise plenary review. Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 142 (3d Cir. 1987).

## III.

We have fully considered the issues raised in connection with the district court's dismissal of DeBlasio's taking of property without just compensation claim, his section 1985(3) claim, his claim under the commerce clause, as well as his claims that the district court erred in affirming the magistrate judge's discovery order and in denying DeBlasio's motion for leave to file an amended complaint. We conclude that these issues lack merit and do not require discussion.

We now address whether the district court properly granted summary judgment in favor of the defendants in connection with DeBlasio's due process claims. DeBlasio asserts that the defendants' actions violated his Fourteenth Amendment right to both procedural and substantive due process. We will consider each of these contentions in turn.

## A. Procedural Due Process

Relying on our decisions in Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988), and Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir. 1991), the district court concluded that DeBlasio's procedural due process claims failed because New Jersey provides a constitutionally adequate process for challenging wrongful zoning decisions. We agree that our decisions in Bello and Midnight Sessions defeat DeBlasio's procedural due process claims.

In order to establish a violation of his right to procedural due process, DeBlasio, in addition to proving that a person acting under color of state[3] law deprived him of a protected property interest,[4] must establish that the state

---

[3]. DeBlasio's violation of due process claims do not run afoul of the "person acting under color of state law" requirement. Clearly, in finding the zoning ordinance violation and in denying the application for a variance, the defendants were acting under color of state law.

[4]. On occasion, we have refrained from conducting inquiry into the question whether the plaintiff was deprived of a protected property interest, and have proceeded directly to evaluate the nature of the process the plaintiff received. See e.g., Bello, 840 F.2d at 1127-28. Following our example in Bello, among other cases, the district court never explicitly considered whether DeBlasio had a protected property interest before evaluating the sufficiency of the process afforded DeBlasio.

procedure for challenging the deprivation does not satisfy the requirements of procedural due process.  Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991) (citation omitted).  As we observed in Bello, a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body.  Bello, 840 F.2d at 1128 (citations omitted).  In other words, when a state "affords a full judicial mechanism with which to challenge the administrative decision" in question, the state provides adequate procedural due process, id., whether or not the plaintiff avails him or herself of the provided appeal mechanism.  Midnight Sessions, 945 F.2d at 682.

In Bello, a developer sued the Code Enforcement Officer of Bethel Park, Pennsylvania, as well as the municipal council and the municipality itself, for denying him a building permit. Bello alleged that the Code Enforcement Officer denied him a building permit as a result of pressure from members of the council who were trying to hinder Bello's building project for personal and political motives.  We found that sufficient evidence supported Bello's allegations to create a genuine issue with respect to their truth.  Thus, for reasons we will discuss at greater length below, we reversed the district court's grant of summary judgment in favor of the defendants on Bello's substantive due process claim.  However, as for procedural due process, we stated:

> Pennsylvania affords a full judicial
> mechanism with which to challenge the
> administrative decision to deny an

application for a building permit. Indeed, the plaintiffs utilized that mechanism and obtained a building permit. While the Pennsylvania courts have ruled that the initial decision to deny the permit was wrong, the plaintiffs have not and cannot show that the decision was made pursuant to a constitutionally defective procedure . . . .

It is the law in this Circuit that a state provides adequate due process when it provides "reasonable remedies to rectify legal error by a local administrative body." Pennsylvania clearly provides such remedies, as this case exemplifies, and therefore plaintiffs have no justifiable [procedural] due process claim.

Bello, 840 F.2d at 1128 (citations omitted).

New Jersey provides a full judicial process for challenging adverse zoning decisions. As the district court noted,

N.J.S.A. § 40:55D-70 (a) and (b) provide that the ZBA shall have power to hear and decide appeals of the zoning officer's enforcement of a zoning ordinance and hear and decide requests for an interpretation of a zoning ordinance. Furthermore, pursuant to subsections (c) and (d) of this statutory section, the ZBA shall have the power to grant a request for a variance or other relief, so long as the variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zone ordinance.

Also, pursuant to N.J.S.A. § 40:55D-72, any interested party affected by any decision of an administrative officer of the municipality based on or made in the enforcement of the zoning ordinances or official map can appeal to the ZBA.

Last, pursuant to Rule 4:69-1, et seq. of the New Jersey Court Rules, plaintiff is entitled to a review, a hearing and relief by

> filing a complaint, before the expiration of 45 days from the time the plaintiff received notice that his or her application was denied, in the Superior Court, Law Division, bearing the designation "In Lieu of Prerogative Writs."

(Appendix 306-07).

DeBlasio has not alleged that this procedure is inadequate, or that it is anything less than the procedure we found constitutionally adequate in <u>Bello</u>. We conclude that the procedures for challenging Venettone's citation as well as the ZBA's denial of DeBlasio's variance application are constitutionally sufficient.[5]

### B. Substantive Due Process

Substantive due process is an area of the law "famous for its controversy, and not known for its simplicity." <u>Schaper v. City of Huntsville</u>, 813 F.2d 709, 716 (5th Cir. 1987). Our substantive due process inquiry is rendered even more difficult by the paucity of Supreme Court guidance.

The district court based it dismissal of DeBlasio's substantive due process claim on its conclusion that DeBlasio had failed to offer sufficient evidence to support the allegation that the ZBA had employed unlawful criteria in denying DeBlasio's application for a use variance and in determining that DeBlasio's property was in violation of the West Amwell zoning ordinance.

_____

[5]. In <u>Rogin v. Bensalem Tp.</u>, 616 F.2d 680 (3d Cir. 1980), we upheld Pennsylvania's scheme for challenging zoning ordinances, which scheme provided for a ministerial review of a proposed use by a Zoning Officer, appeal to the Zoning Hearing Board, and appeal of that decision to the Court of Common Pleas. <u>Rogin</u>, 616 F.2d at 694-95.

Before addressing the sufficiency of DeBlasio's evidence of improper motive, we must first determine (1) whether a plaintiff such as DeBlasio must, as a predicate to a substantive due process claim, establish possession of a property interest worthy of substantive due process protection; and (2) if so, whether DeBlasio possesses a property interest worthy of protection under substantive due process. See Ersek v. Township of Springfield, Delaware County, 822 F. Supp. 218, 220 (E.D. Pa. 1993).

In Reich v. Beharry, 883 F.2d 239 (3d Cir. 1989), we observed that the issue of whether and when state-created property interests invoke substantive due process concerns has not been decided by the Supreme Court. Reich, 883 F.2d at 243. Without attempting to define the set of state-created property interests protected by the concept of substantive due process, we concluded in Reich: "[i]t is apparent . . . that, in this circuit at least, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." Id. at 244.

In Reich, the plaintiff was hired by Washington County, Pennsylvania, to investigate and prosecute the Washington County controller. Reich carried out his assignment and then submitted bills for payment to the county. Id. at 239. However, to receive payment, Reich first had to secure the controller's approval, which the controller refused to provide. Reich sued the controller, claiming that she had deprived him of property without due process of law in violation of the procedural and substantive components of the Fourteenth Amendment's due process

clause.  Id. at 240.  The controller filed a motion to dismiss

for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The

district court granted the controller's motion.  Id.

　　　　We affirmed the district court's dismissal of Reich's

complaint.  We held that Reich had failed to state a substantive

due process claim.  We relied on Ransom v. Marrazzo, 848 F.2d 398

(3d Cir. 1988), a case in which we held that an entitlement under

state law to water and sewer services does not constitute a

protectible property interest for purposes of substantive due

process.  Id. at 244.  We explained in Reich:

> We believe it follows a fortiori from the
> holding in Ransom that Reich's complaint
> fails to state a substantive due process
> claim.  As we have noted, the only interest
> that Reich had at stake before Beharry was
> his interest in avoiding delay in the receipt
> of payment of a bill for professional
> services rendered.  We can think of no basis
> for according substantive due process
> protection to this interest while denying it
> to those who have had their utility service
> terminated.

Id. at 244-45.

　　　　While we refrained in Reich from defining the set of

property interests protected by the concept of substantive due

process, we did suggest that only fundamental property interests

are worthy of such protection.  We stated that:

> [i]n Mauriello v. U. of Med. & Dentistry of
> N.J., 781 F.2d 46 (3d Cir. 1986), this court
> acknowledged that what constitutes a property
> interest in the procedural due process
> context might not constitute one in that of
> substantive due process.  In Mauriello, a
> student [was] dismissed for academic reasons
> from a doctoral program . . . .

> In discussing the student's substantive due process claim, the Mauriello court appeared to approve of Justice Powell's view . . . that, while property rights for procedural due process purposes are created by state law, substantive due process rights are created by the Constitution. The Mauriello court also "share[d] Justice Powell's doubt about the existence of . . . a substantive due process right in the circumstances here," noting that the student's claim to continued enrollment in a graduate program bore "`little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution.'"

Reich, 883 F.2d at 244 (quoting Mauriello, 781 F.2d at 50) (quoting Regents of University of Michigan v. Ewing, 474 U.S. 214 (1985) (Powell, J., concurring)).

Though we have yet to clearly define the category of property interests protected by the concept of substantive due process, in Bello v. Walker we provided some guidance in the area of land use regulation.

In Bello, the plaintiffs obtained municipality approval for a five stage subdivision building plan. After obtaining building permits for the first stage of the plan, and completing the first stage of construction, the municipality's code enforcement officer denied the plaintiffs' application for building permits to allow the plaintiffs to commence construction of the housing units which comprised the fifth stage of the project. The code enforcement officer contended that he denied the plaintiffs' building permit application because the plaintiffs sought to construct the fifth stage of the project

before completing phases two through four.  Bello, 840 F.2d at 1126.  The plaintiffs, however, had never agreed to develop the project in the order suggested by the numerical sequence of the stages.  Id.

The plaintiffs ultimately sought redress in the Court of Common Pleas of Allegheny County, Pennsylvania.  After a hearing, the court ordered the municipality to issue the building permits.  Id.  However, prior to obtaining relief in state court, the plaintiffs filed a complaint under 42 U.S.C. § 1983 against the municipality and the individual municipal officials in the United States District Court for the Western District of Pennsylvania.  The plaintiffs alleged that a number of the defendant officials had improperly influenced the decision to deny the plaintiffs' building permit application, in violation, inter alia, of the plaintiffs' constitutional rights to due process.  Id. at 1127.

The defendants moved for summary judgment, presenting evidence that the building permit denial had issued solely because the plaintiffs sought to undertake the fifth stage before developing stages two through four.  In opposition to the motion, the plaintiffs presented evidence indicating that certain town council members had personal animosity towards one of the plaintiffs' employees, and that various defendant members of the town council had pressured members of the council to hinder the plaintiffs' building project so long as the plaintiffs employed this particular employee.  Id.  The district court granted the defendants' motion for summary judgment.

We reversed the district court's grant of summary judgment in connection with the plaintiffs' substantive due process claims. We explained in this regard, after canvassing the recent Supreme Court jurisprudence in the area, that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." Id. at 1129. We found that the plaintiffs presented evidence from which a fact-finder could reasonably conclude that certain council members "improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits." Id. at 1129.

> These actions can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983. While the defendants claim that the building permit was denied because of plaintiffs' failure to build in numerical sequence, thus presenting an arguably rational ground for the denial of the permit, it is the factfinders' role to resolve this factual dispute.

Id. at 1129-30.

In Bello we did not discuss whether the plaintiffs possessed a property interest worthy of substantive due process protection.[6] In subsequent cases we have clarified that to state

_____

[6]. Similarly, in the cases of Pace Resources, Inc. v. Shrewsbury Tp., 808 F.2d 1023, 1034-36 (3d Cir. 1987), and Neiderhiser v. Borough of Berwick, 840 F.2d 213, 217-18 (3d Cir. 1988), in the context of land use regulation, we did not identify a specific property interest at issue worthy of substantive due process before addressing whether the zoning decision in question violated substantive due process.

a substantive due process claim, a plaintiff must have been

deprived of a particular quality of property interest.  Our most

recent restatement of this proposition is found in Acierno v.

Cloutier, 40 F.3d 597 (3d Cir. 1994).[7]  There we stated that when

complaining of a violation of substantive due process rights, a

plaintiff must prove that the governmental authority "acted to

`infringe [ ] a property interest encompassed by the Fourteenth

Amendment.'"  Acierno, 40 F.3d at 616 (quoting Midnight Sessions,

945 F.2d at 679);[8] accord Taylor Investment v. Upper Darby

Township, 983 F.2d 1285, 1292 (3d Cir. 1993) (stating, in dicta,

that to prevail on a substantive due process claim, a plaintiff

_____

[7].   Though one issue in Acierno was considered by the court
sitting in banc, the substantive due process issue was considered
by the panel only.  Acierno, 40 F.3d at 600.

[8].   We further explained in Acierno:

> As the Supreme Court has previously stated:
> Property interests, of course, are not
> created by the Constitution.  Rather, they
> are created and their dimensions are
> defined by existing rules or understandings
> that stem from an independent source such
> as state law -- rules or understandings
> that secure certain benefits and that
> support claims of entitlement to those
> benefits.  Board of Regents v. Roth, 408
> U.S. 564, 577 (1972).
>
> Thus . . . when analyzing substantive
> due process claims courts are required to
> turn to state and local law to determine
> whether the plaintiff possessed a property
> interest which was abrogated by the
> governmental action.

Id. at 616.

"must demonstrate that an arbitrary and capricious act deprived them of a protected property interest").

We think it consistent with Bello to conclude that ownership is a property interest worthy of substantive due process protection.[9]  See, e.g., Ersek v. Township of Springfield, Delaware County, 822 F. Supp. 218, 221 n.3 (E.D. Pa. 1993) (offering a similar interpretation of Bello).  Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership.  Thus, in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a

_____

[9].     The dissent does not read Bello as "standing for the proposition that mere ownership is a sufficient substantive due process property interest."  Dis. Op. Typescript at 5.  Instead, the dissent would hold that "legitimate claim[s] of entitlement" determine the set of property interests worthy of substantive due process.  Our understanding of Bello's impact upon this case leads us to a different conclusion.

First, we note that in Bello, we did not undertake an entitlement analysis before finding that the plaintiff's asserted substantive due process claim survived summary judgment.  See Bello v. Walker, 840 F.2d 1124, 1128-1130.  Second, we are less certain that the "legitimate claim of entitlement" approach is mandated by Supreme Court jurisprudence.  As we have previously noted, the Supreme Court has yet to articulate a standard for determining which state-created property interests merit substantive due process protection.  See Reich v. Beharry, 883 F.2d 239, 243 (3d Cir. 1989).  As for Board of Regents v. Roth, 408 U.S. 564 (1972), a decision the dissent relies upon, we agree with the observation of the Court of Appeals for the Second Circuit:  in Roth, the Court announced that a property interest within the meaning of the Fourteenth Amendment "includes not only what is owned but also, in some limited circumstances, what is sought."  RRI Realty Corp. v. Inc. Village of Southampton, 870 F.2d 911, 915 (2d Cir. 1989) (emphasis supplied) (citing Roth, 408 U.S. at 577).

substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.[10]  Where the plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection.[11]

## C.  Sufficiency of Evidence of Substantive Due Process Violation

We now turn our attention to the question of the sufficiency of DeBlasio's evidence of improper motive.

As explained above, in Bello, we reversed the district court's grant of summary judgment, concluding that the plaintiffs

---

[10].    In Neiderhiser v. Borough of Berwick, 840 F.2d 213 (3d Cir. 1988), we held that a lessor who had been denied an exemption from a zoning ordinance stated a substantive due process claim by alleging that the exemption application was arbitrarily and irrationally denied.  See Neiderhiser, 849 F.2d at 218 (citing Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988).  Having implied in Neiderhiser that a lessor possesses a property interest worthy of substantive due process protection against arbitrary and irrational governmental deprivation, an actual property owner, a fortiori, possesses such an interest.

[11].    We do not share the dissent's legitimate concern that this standard "will invite land owner into any federal court to challenge even the most mundane and routine zoning decisions[.]" Dis. Op. Typescript at 7.  The standard we articulate today is implicit in Bello, and Bello has not over-burdened the federal courts by inviting meritless landowner suits.  Moreover, we note by way of analogy that persons denied licenses required for the practice of certain occupations are not required to demonstrate entitlement to the license sought in order to state a substantive due process claim.  To state a substantive due process claim, such persons need only assert that the license sought was arbitrarily denied.  See RRI Realty Corp., 870 F.2d at 917-18 n.4 (citing Wilkerson v. Johnson, 699 F.2d 325 (6th Cir. 1983)).  This rule has not invited abuse of the federal courts by persons denied licenses to pursue particular occupations.

had presented evidence from which a fact-finder could reasonably conclude that certain council members, for partisan political or personal reasons, improperly interfered with the process by which the municipality issued building permits.  Bello, 840 F.2d at 1129-130.  DeBlasio has made allegations that, if proven, would establish a similar violation of his right to be free from arbitrary and capricious government action affecting his interest in use and enjoyment of property.  The question is whether DeBlasio has come forward with enough evidence in support of those allegations to survive a motion for summary judgment.

The district court did not think so.  The court down-played the significance of Werner Hoff, Sr.'s 1988 unscheduled encounter with Holmes, stating:

> The only possible "illegal conduct" which plaintiff might be referring to appears in Holmes's affidavit and recites that Hoff participated in the hearings in light of the five-minute conversation which took place between the two individuals.  This evidence is not sufficient to enable a jury to establish bias, bad faith, improper motive, racial animus, or the existence of partisan political or personal reasons and, therefore, to return a verdict in plaintiff's favor.

(Appendix at 309).

We disagree with the district court.  We conclude that a genuine issue of material fact must be resolved to determine whether or not Werner Hoff, for personal reasons, improperly interfered with the process by which the Township of Amwell rendered zoning decisions, and that summary judgment should not have been entered in favor of the defendants.  Werner Hoff had

decided to abstain from participating in the ZBA hearings in May or June of 1990.  By September, however, he believed that his apparent conflict had been resolved.  We do not understand why he believed this to be so.  One of his sons still owned the West Amwell property, and the property remained unoccupied.  In fact, Werner Hoff, Sr. continued to hold a mortgage on it.  On the other hand, and contrary to DeBlasio's assertions, the record does not show that Hoff ever "pressured" Holmes to abandon the DeBlasio property in favor of his own.  Still, Werner Hoff did state, both to Holmes and later to Venettone, that he believed his family's property would be a good place for Holmes' business.  In addition, in his conversation with Holmes, Hoff specifically mentioned that one advantage of the Hoff property was its more favorable zoning status.

Hoff never approached Holmes after 1988, and the ZBA hearings did not begin until May of 1991.  Additionally, even if Holmes were forced to leave the DeBlasio property, he never indicated that he would want to relocate on Hoff's land.  To the contrary, in his conversation with Hoff, Holmes stated that he was not interested in the Hoff property, because the Quonset hut was not large enough to suit his needs.  We conclude, nonetheless, that a genuine issue of material fact exists as to whether the ZBA's decisions were, in some part, influenced by Werner Hoff, Sr.'s personal, financial interest in the resolution of DeBlasio's zoning problems.  Under Bello, DeBlasio thus presented sufficient evidence to withstand the defendants' motion

for summary judgment in relation to DeBlasio's substantive due process claim.[12]

IV.

For the reasons stated above, we will reverse the district court's grant of summary judgment in relation to DeBlasio's substantive due process claim and New Jersey tort claims against the ZBA defendants and remand for proceedings consistent with this opinion.  We will affirm the district court's dismissal of DeBlasio's procedural due process claim, claim for taking of property without just compensation, section 1985(3) claim, commerce clause claim, and state tort claims against the Lavans.  We will also affirm the district court's denial of DeBlasio's motion for leave to file an amended complaint, as well as the district court's affirmance of the magistrate judge's discovery order.

---

[12]. In Count III of his complaint, DeBlasio stated claims under New jersey tort law for intentional interference with contractual relations and economic opportunity.  The district court granted summary judgment on those claims in favor of the ZBA defendants because DeBlasio failed to comply with the notice provisions of the New Jersey Tort Claims Act ("NJTCA").  Because DeBlasio has asserted intentional tort claims, the notice provisions of the NJTCA do not apply and it was error for the district court to apply them.  See Fuchilla v. Layman, 210 N.J.Super. 574 (N.J.Super. A.D. 1986).

Although it offered no explanation for having done so, the district court also appears to have granted summary judgment in favor of the Lavans in relation to DeBlasio's tort claim against them.  We will affirm the district court's grant of summary judgment in favor of the Lavans as there is no evidence to support DeBlasio's tort claim against them.

McKELVIE, District Judge (sitting by designation), dissenting.

I agree with the majority that this court should affirm the district court's grant of summary judgment in favor of the defendants with respect to DeBlasio's 42 U.S.C. § 1983 procedural due process claim, unlawful taking claim, § 1985(3) claim, commerce clause claim, and state tort claims against the Lavans. I further agree that we should reverse the grant of summary judgment in favor of the ZBA defendants with respect to the New Jersey tort claims. However, because I believe this court should affirm the grant of summary judgment as to DeBlasio's substantive due process claim, I must dissent from parts III.B & C of the majority's opinion.

I.      Introduction and Factual Background

DeBlasio claims the ZBA defendants violated his rights to substantive due process in determining that his property was not in compliance with the West Amwell zoning ordinances and in denying his application for a use variance. I agree with the majority that this case raises important questions about what property interests substantive due process will protect and that searching for the proper standard is a complicated matter. The majority correctly determines that in order to establish a violation of substantive due process, a plaintiff such as DeBlasio must demonstrate that he possesses a property interest worthy of substantive due process protection. However, I believe the majority's next conclusion, that a plaintiff need only be a property owner to raise a substantive due process violation, is unwarranted and unwise. This standard opens the doors to the

federal courts far wider than the Constitution contemplates, and surely will require the federal courts to sit as "zoning boards of appeals." See RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989). Furthermore, even under the majority's definition of what constitutes a sufficient property interest, I believe DeBlasio has failed to demonstrate the existence of a genuine issue of material fact and thus, the district court's grant of summary judgment must be affirmed.

The facts of this case are simple and straightforward. Indeed, the parties do not disagree as to the following central facts. This case begins with the only two quonset huts existing in West Amwell Township, each located on a different piece of property. Plaintiff is the owner of one of these pieces of property, which he began renting in 1979 to Peter Holmes for his lead acid battery distribution business.[13] The other parcel of land is owned by the son of defendant Werner Hoff, a member of the ZBA. On February 8, 1989, Zoning Officer Venettone issued a first notice to DeBlasio that his property was in violation of West Amwell zoning ordinances. At around the same time, Hoff encountered Holmes in a diner and suggested that Holmes consider renting Hoff's son's quonset hut property. Holmes told Hoff that he was not interested because the hut was too small for his use.

---

[13]. I would note that the record is devoid of any explanation as to why it is pertinent that the structure on each piece of property is a quonset hut, or why it was crucial that Holmes's business be located in a quonset hut.

On June 26, 1990, the ZBA conducted a hearing on DeBlasio's first notice of violation, and decided that since Venettone's letter to DeBlasio failed to specifically identify the zoning ordinance violated, it was therefore inappropriate to make a determination on the violation. Some time after this hearing, Venettone called Hoff concerning zoning business, at which time they discussed the DeBlasio matter and Hoff gave Venettone his opinion that DeBlasio's property was in violation of the zoning laws. On August 7, 1990, Venettone issued a second notice of violation to DeBlasio, stating that his use of the property was an expansion of a pre-existing, nonconforming use exception to the zoning ordinances. DeBlasio appealed the decision and applied for a use variance. On October 23, 1990, the ZBA voted to uphold Venettone's determination of noncompliance. In addition, on May 28, 1991, the ZBA adopted a motion to deny DeBlasio's application for a variance, and on June 25, 1991, they adopted a resolution memorializing that decision.

Thus, the parties are not in dispute as to the events that occurred leading up to the ZBA's determination that DeBlasio's property was in violation of West Amwell's zoning ordinances and its decision to deny DeBlasio a use variance. The only dispute, therefore, is as to what inferences may reasonably be drawn from those facts. The district court determined that, after the close of lengthy discovery, DeBlasio failed to offer evidence sufficient to allow a reasonable jury to draw the

inference that the ZBA's zoning decisions were based on bias, improper motive, or some other unlawful criteria. As such, the case was ripe for the grant of a summary judgment. However, the majority disagrees, concluding that "a genuine issue of material fact must be resolved to determine whether or not Werner Hoff, for personal reasons, improperly interfered with the process by which the Township of Amwell rendered zoning decisions." Slip op. at 25.

II.        DeBlasio's Property Interest

The majority correctly begins its analysis with the property interest DeBlasio must possess in order to make out a claim under substantive due process, and focuses on Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988). In Bello, we did not discuss whether the plaintiffs possessed a requisite property interest; however, we examined the district court's grant of summary judgment assuming that plaintiffs had a sufficient property interest in obtaining a municipal building permit. Thus, the majority notes that one can read Bello as requiring a plaintiff to possess "a particular quality of property interest" before he or she may bring a claim for a substantive due process violation. This court recently reaffirmed this position in Acierno, holding that a plaintiff "complaining of a violation of substantive due process rights . . . must prove that the governmental authority acted to 'infringe[] a property interest encompassed by the Fourteenth Amendment.'" Acierno v. Cloutier,

40 F.3d 597, 616 (3d Cir. 1994) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991), cert. denied, 112 S. Ct. 1668 (1992)); see also Reich v. Beharry, 883 F.2d 239, 245 (3d Cir. 1989) (finding plaintiff "possesses no property interest that entitles him to substantive due process protection").

The majority falters, however, when it turns to the determination of exactly what property interests will qualify for substantive due process protection. The majority finds "it consistent with Bello" to hold that mere ownership is "a property interest worthy of substantive due process protection." Slip op. at 22. Thus, in order to establish a violation of substantive due process, a plaintiff need only allege that a decision limiting the use of land he or she owns was "arbitrarily or irrationally reached." I believe this rule of law is incorrect for two reasons.

First, I believe that the majority's standard represents a departure from the legal precedent of the Supreme Court and of this Circuit. The majority relies on Bello and Neiderhiser v. Borough of Berwick, 840 F.2d 213 (3d Cir. 1988), to support its conclusions. However, I do not read Bello to stand for the proposition that mere ownership is a sufficient substantive due process property interest. As stated above, the property interest at issue in Bello was the apparent right to a municipal building permit. Similarly, Neiderhiser does not

support such a broad standard.  In Neiderhiser, as in Bello, we skipped the necessary determination of what property interest plaintiffs possessed.  However, in that case, the plaintiffs were lessors who asserted a right to a special zoning exemption "based on the fact that the property had been operated on a commercial basis for the past 30 years and that the proposed use was consistent with prior non-conforming . . . use."  Neiderhiser, 840 F.2d at 214.  Thus, it was this interest in the right to a zoning exemption which we assumed was sufficient to allege a viable due process violation.

To answer the question of what "particular qualities" of property interests are protected by substantive due process, I believe our analysis is dictated by our recent decision in Acierno, which follows the Supreme Court's teachings in Board of Regents v. Roth, 408 U.S. 564 (1972).  In Acierno, we adopted the Court's position that property interests are not created by the Constitution, but instead "stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Acierno, 40 F.3d at 616 (quoting Roth, 408 U.S. at 577).  In so doing, we held that "when analyzing substantive due process claims courts are required to turn to state and local law to determine whether the plaintiff possessed a property interest which was abrogated by the governmental action."  Id.

In Roth, the Supreme Court focused its definition of a property interest under the Fourteenth Amendment on "what is sought." RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 915 (2d Cir. 1989). In its test, the Court rejected the supposition that a property interest in a certain benefit could stem from a mere "abstract need or desire for it" or "unilateral expectation of it." Instead, there must be a "legitimate claim of entitlement." Roth, 408 U.S. at 576; accord RRI, 870 F.2d at 915. As we recognized in Acierno, this claim of entitlement must be found in state law.

In footnote 9 of its opinion, the majority displays its uncertainty that Roth's "legitimate claim of entitlement approach" is mandated by the Supreme Court, restating its belief that the Court has "yet to articulate a standard for determining which state-created property interests merit substantive due process protection." Slip op. at 22. Whether or not the Roth approach is required by the Supreme Court, it would appear that this court has already indicated its approval of the "claim of entitlement" standard by holding in Acierno that property interests are created by "rules and understandings that secure certain benefits and support claims of entitlement to those benefits." Acierno, 40 F.3d at 616 (emphasis added).

In addition, the "claim of entitlement" standard should be applied in this case not only because it follows from the Supreme Court's and Third Circuit's prior jurisprudence, but also

because it represents the approach to substantive due process zoning cases adopted by many other circuits as well.  See Gardner v. Baltimore Mayor and City Council, 969 F.2d 63, 68 (4th Cir. 1992) (holding that existence of a property interest turns on whether there is a "legitimate claim of entitlement" under state law); Spence v. Zimmerman, 873 F.2d 256, 258 (11th Cir. 1989) (same); RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 917 (2d Cir. 1989) (same);  Carolan v. City of Kansas City, 813 F.2d 178, 181 (8th Cir. 1987) (same); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58-59 (2d Cir. 1985) (same).

Second, and perhaps equally as important, I believe the majority's new standard of "mere ownership" is erroneous because essentially it is tantamount to no standard at all.  It is difficult to imagine that a plaintiff would argue his or her substantive due process rights had been violated as to property he or she did not even own (or at least possess a significant financial interest in).  The majority's conclusion establishes a precedent whereby a plaintiff states a substantive due process claim merely by alleging deliberate and arbitrary abuse of government power.  It invites any land owner into federal court to challenge even the most mundane and routine zoning decisions, ignoring the oft-cited admonition that the role of the federal courts "is not and should not be to sit as a zoning board of appeals."  Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974) (Marshal, J., dissenting).  As Judge Posner wrote for the

Seventh Circuit:  "[I]t is tempting to view every zoning decision that is adverse to the landowner . . . as a deprivation of property. . . . [However, n]o one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions."  Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 465-66 (7th Cir. 1988).

I believe the majority misunderstands the concern I have articulated above when it states in footnote 11 that "Bello has not over-burdened the federal courts by inviting meritless landowner suits."  Slip op. at 24.  My objection to the challenges to routine zoning decisions that could be brought, under the majority's standard, by anyone who owns land is not that the courts will now be flooded by claims that are meritless per se.  It is, rather, that claims brought under this standard do not raise the issues of constitutional significance appropriately addressed by the federal courts.  As the First Circuit has consistently held, "the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes.  In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief."  Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992).  Every zoning decision seemingly "impinges upon a landowner's use and enjoyment of property."  See slip. op. at 23.  Thus, confining the category of property interests a plaintiff

must possess simply to ownership subjects every zoning decision to potential federal review.

I believe, as Judge Posner wrote in Coniston, "[p]roperty is not a thing, but a bundle of rights." 844 F.2d at 465. Hence, we must look to what particular rights and uses a person is entitled by the state through the ownership of a parcel of land in order to determine whether he or she possesses a property interest that merits due process protection. While I can appreciate the majority's frustration at the perceived lack of guidance in its search for what constitutes such a sufficient property interest, the difficulty of the task does not grant us license to set the threshold so low as to eradicate all utility it was intended to possess.

With that preface, I now turn to the evaluation of DeBlasio's claims. DeBlasio alleges his substantive due process rights were violated by two actions of the ZBA--the affirmance of Venettone's determination that DeBlasio's property was not in compliance with a previously granted exception to the West Amwell zoning code and the denial of DeBlasio's application for a use variance. The first step in analyzing DeBlasio's claims is to determine whether he possesses a property interest that is cognizable under the Fourteenth Amendment. See Gardner, 969 F.2d at 68. In order to make this determination, we must look to what "claims of entitlement" can be found in state law.

DeBlasio's claims raise two possible property interests:  his right to the continued nonconforming use of his property and his right to obtain a use variance.  As to the first, the question of whether a claim of entitlement exists "should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood" that DeBlasio's property would have been found to comply with the pre-existing, nonconforming use exception granted to the first owner.  See Yale Auto Parts, 758 F.2d at 59.  It is true that under the New Jersey Municipal Land Use Act, "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued."  N.J. Stat. Ann. § 40:55D-68 (1991).  However, the New Jersey Supreme Court has recognized the general policy in the law to restrict and disfavor a nonconforming use: "Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice."  Town of Belleville v. Parrillo's, Inc., 416 A.2d 388, 391 (N.J. 1980).  Thus, an existing nonconforming use may not be enlarged or changed as of right and will be allowed to persist only "if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance."  Id.  Furthermore, "[w]here there is doubt as to the

substantiality of the extension, it should be disapproved." Hartman v. Township of Randolph, 155 A.2d 554, 558 (N.J. Super. Ct. App. Div. 1959).

The previous owners of DeBlasio's property were operating a one-man automobile repair shop when West Amwell adopted its first zoning ordinance, and it was this use that was permitted to continue as a pre-existing nonconforming exception to the zoning restrictions. Holmes's interstate battery distributorship clearly represents a departure from this prior use, and there would appear to be some doubt as to whether this battery business is "substantially the same kind of use" as the previous single person car repair shop. Thus it cannot be said that there is a "certainty or a very strong likelihood" that DeBlasio would have been permitted to continue the present use of his property indefinitely, and that he would never have been deemed to have expanded the pre-existing nonconforming use exception granted to the prior owners. Consequently, DeBlasio possesses no claim of entitlement under state law to the continued nonconforming use of his property, and thus does not possess this first category of property interest which he asserts.

As to the second possible property interest, that is, whether DeBlasio had a right to approval of his application for a use variance, many courts have held that "whether a property-holder possesses a legitimate claim of entitlement to a permit or

approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or approval.  Any significant discretion conferred upon the local agency defeats the claim of a property interest."  Gardner, 969 F.2d at 68; accord New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480 (7th Cir. 1990); Spence, 873 F.2d at 258; RRI, 870 F.2d at 918; Carolan, 813 F.2d at 181; Michigan Environmental Resources Associates, Inc. v. City of Macomb, 669 F. Supp. 158, 160 (E.D. Mich. 1987).  Thus, a cognizable property interest exists "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured."  RRI, 870 F.2d at 918.  This standard "balances the need for local autonomy in a matter of paramount local concern" (such as zoning regulations) with the need for constitutional protection from governmental abuses of power.  See Gardner, 969 F.2d at 69.

New Jersey zoning law authorizes a zoning board of adjustment to grant a variance in "particular cases and for special reasons" to permit "(1) a use or principal structure in a district restricted against such use or principal structure, [or] (2) an expansion of a nonconforming use."  N.J. Stat. Ann. § 40:55D-70(d).  However, no variance may be granted unless it can be done "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."  Id.  These provisions include

no mandatory language but instead appear to create a flexible standard which assigns boards of adjustment the power to grant a variance in special cases at their discretion. Moreover, the New Jersey courts have recognized that the legislature "has vested discretionary authority in boards of adjustment to grant or deny variance applications." Eagle Group v. Zoning Bd. of Adjustment, 644 A.2d 1115, 1120 (N.J. Super. Ct. App. Div. 1994). It follows, then, that state law has given DeBlasio no claim of entitlement to a use variance, and thus no property interest in the approval of his application.

Therefore, since DeBlasio has failed to demonstrate he possesses any property interests cognizable under the Fourteenth Amendment that could have been abrogated by the ZBA, the district court was correct in granting summary judgment in favor of the defendants on this issue, and I believe this court should affirm that decision.

III.     Evidence of Personal Bias or Improper Motive

After determining that "a land-owning plaintiff" who alleges that any governmental decision affecting the use of his or her land was arbitrarily or irrationally reached has, "as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection," the majority goes on to examine "whether DeBlasio has come forward with enough evidence in support of [his] allegations to survive a motion for summary judgment." Slip op. at 23-25. Even if I were

to adopt the majority's position that mere ownership constitutes a property interest sufficient to invoke constitutional protection, I do not agree with the majority's conclusion that DeBlasio has presented sufficient evidence from which a fact-finder could reasonably conclude that the government action was taken based on improper motives or unlawful criteria.

The Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A genuine issue of material fact arises only if a reasonable jury could find for the nonmoving party on that fact. Id. at 248. The nonmovant is not given the benefit of every inference or possibility, but only of every reasonable inference. Spence, 873 F.2d at 257. The nonmoving party must offer sufficient evidence such that a reasonable jury could return a verdict in favor of that party. Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250–51 (citations omitted).

After convincing the court he possesses a cognizable property interest, DeBlasio must demonstrate he was the victim of arbitrary and capricious government action in order to establish that his substantive due process rights were violated. The district court correctly recognized that this determination turns

on whether the actions taken by the ZBA against DeBlasio were based on unlawful criteria such as personal bias, bad faith, or improper motive.

To support his allegations of personal bias and improper motive, DeBlasio appears to allege the following facts: 1) At some point in early 1989, Hoff encountered Holmes in a diner and suggested that Holmes consider renting Hoff's son's quonset hut property. During the conversation, Hoff noted that the zoning regulations were more beneficial for his business. However, Holmes told Hoff that he was not interested because the hut was too small for his use. 2) Some time after June 26, 1990, Venettone called Hoff concerning zoning business, at which time they discussed the DeBlasio matter and Hoff gave Venettone his opinion that DeBlasio's property was in violation of the zoning laws. 3) Hoff participated in the 1990-91 zoning hearings regarding DeBlasio's property. As I stated above, defendants do not dispute that these events occurred. The district court found that this evidence was insufficient to enable a reasonable jury to find bias or improper motive, and thus to return a verdict in DeBlasio's favor, and I agree.

As the majority recognized, "the record does not show that Hoff ever 'pressured' Holmes to abandon the DeBlasio property in favor of his [son's]." Slip op. at 25-26. He had no contact with Holmes regarding this suggestion after early 1989. It is also undisputed that Holmes believed the other quonset hut

property was inadequate for his business, and there is no evidence to suggest that Holmes would have relocated to that property. Furthermore, Venettone's own testimony shows that he called Hoff in his capacity as secretary of the board of adjustment and broached the subject of the DeBlasio zoning matter to get information about it. None of the above evidence is sufficient to support the inference that Hoff's actions as a member of the ZBA were influenced by personal bias or improper motive; no reasonable jury could draw this inference, as it would be based solely on mere speculation.

DeBlasio also contends that Hoff's involvement in the hearings reveals a conspiracy on the part of the ZBA to violate his substantive due process rights. However, DeBlasio has provided insufficient evidence to support this theory. It would appear that discovery in this case lasted for twelve months, and yet DeBlasio has been unable to present any facts to demonstrate the existence of a conspiracy. While the district court prohibited DeBlasio from deposing the members of the ZBA as to the mental thought processes they employed in reaching the decision to deny a use variance, DeBlasio remained free to inquire into ex parte meetings, off-the-record communications, or discussions between Hoff and other ZBA members, or other manifestations of personal animus, and to probe for documentary evidence of such events. But after the close of lengthy discovery, DeBlasio has come forward with no evidence of any

discussions, arrangements, promises, or agreements between Hoff and the other ZBA members to vote against DeBlasio. Furthermore, he has not identified a single occasion of contact between Hoff and any board member that would suggest improper conduct. Similarly, DeBlasio has supplied no evidence that would show Hoff was retaliating against Holmes because he did not wish to move to Hoff's son's property. Thus, no reasonable jury could find that a conspiracy existed within the ZBA to deprive DeBlasio of substantive due process.

Finally, DeBlasio has failed to offer any facts to show a causal link between Hoff's alleged personal bias and membership on the zoning board and the decisions affecting DeBlasio's property. First, the ZBA's vote to affirm Venettone's determination that DeBlasio's property was an expansion of the pre-existing nonconforming use exception was unanimous. Second, the vote to deny the application for a variance was four to three, with Hoff voting against. However, the grant of a variance requires five votes by law. See N.J. Stat. Ann. 40:55D-70(d). Even if Hoff did not participate in the vote, DeBlasio would have garnered only three votes in support of the variance, still rendering his application unsuccessful. Again, no reasonable jury could find that the ZBA's decisions were based on unlawful criteria. DeBlasio simply has been unable to provide evidence that would support his allegations. Because DeBlasio has, after adequate time for discovery, failed to make a showing

sufficient to establish essential elements of his case, upon which he will bear the burden of proof, I would affirm the district court's grant of summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV.      Conclusion

The district court granted summary judgment in favor of the ZBA defendants on DeBlasio's substantive due process claim. The majority reverses this decision, finding that DeBlasio has offered sufficient evidence to survive summary judgment.  In so doing, the majority holds that mere ownership is a sufficient property interest worthy of substantive due process protection. I disagree with that conclusion, and furthermore would affirm the grant of summary judgment as DeBlasio has failed to demonstrate he possesses a property interest cognizable under the Fourteenth Amendment.  However, even under the majority's conclusion as to the requisite level of property interest, I would affirm summary judgment, as I believe DeBlasio has failed to present evidence that would permit a reasonable jury to find the ZBA's zoning decisions with regard to DeBlasio were based on personal bias, improper motive, or some other unlawful criteria.

I respectfully dissent.