**Alfred BOUDWIN and Dorothea Boudwin, Plaintiffs,**

v.

**GREAT BEND TOWNSHIP, H. Douglas Hall and Edmund Jones, Defendants.**

**Civil Action No. 3:95–0312.**

United States District Court, M.D. Pennsylvania.

March 28, 1996.

Robertson Taylor, Maureen Jordan, La-Brum & Doak, Bethlehem, PA, for Defendants.

## MEMORANDUM

DURKIN, United States Magistrate Judge.

Before the court is defendants' motion for judgment on the pleadings or, in the alternative, to dismiss plaintiffs' complaint for lack of subject matter jurisdiction.

Plaintiffs, former property owners in Great Bend Township, brought this action pursuant to 42 U.S.C. § 1983 against Great Bend Township, H. Douglas Hall, a sewage enforcement officer for the Township and Edmund E. Jones, a secretary for the Township in which they seek damages by reason of defendants' alleged arbitrary and irrational conduct which lead to the recision of an approval of plaintiffs' plan for subdivision of their property.

On December 22, 1995, defendants filed a motion for judgment on the pleadings or, in the alternative, to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, together with a supporting brief. (Doc. No. 14). On January 29, 1996, plaintiffs filed an opposing brief. (Doc. No. 16). On February 6, 1996, defendants filed a reply brief. (Doc. No. 18).

Since defendants have moved for judgment on the pleadings, the allegations in the complaint will be set forth in some detail. Plaintiffs allege that in August 1988 they were the owners of approximately 24.88 acres of real estate located in Great Bend Township. On October 9, 1989, the plaintiffs submitted a subdivision plan to the Susquehanna County Planning Commission which proposed to divide this real estate into four separate parcels. As a part of the plan, plaintiffs included percolation testing documents signed by Hall.

Plaintiffs allege that on August 6, 1988 and on October 9, 1988, Hall had performed percolation testing on plaintiffs' land. Hall reported that the individual lots were suitable for on-lot sewage disposal systems and Hall signed the Planning Module indicating that

Raymond P. Wendolowski, Koff, Wendolowski, Ferguson & Mangan, P.C., Wilkes–Barre, PA, for Plaintiffs.

the individual lots were suitable for on-lot sewage disposal systems.

Plaintiffs allege that on or about March 15, 1990, the Township found the plaintiffs' subdivision plan to be in conformance with the applicable Township ordinances, the Township Sewage Facilities Plan and all other applicable regulations and therefore approved the subdivision as of March 15, 1990. Plaintiffs allege that on or about March 29, 1990, the Susquehanna County Planning Commission also found the plaintiffs' subdivision plan to be in conformity with county subdivision and land development ordinances and therefore approved the subdivision as of March 29, 1990. Plaintiffs allege that by April 1993, buyers for all four parcels had been found, and were prepared to purchase the parcels.

Plaintiffs allege that pursuant to the Susquehanna County Subdivision Land Development Ordinance § 503.02, the Township and its secretary, Jones, are required to forward the approved Planning Modules to DER for final approval. Plaintiffs allege that if no information is received from DER within 120 days after the Module is sent, it is presumed that the approval stands. Plaintiffs allege that unbeknownst to them, the Township and Jones failed to forward plaintiffs' Planning Module to DER in violation of § 503.02.

Plaintiffs allege that at some point after the Township and the Susquehanna County Planning Commission issued their approvals in 1990, the Township and Susquehanna County consolidated their sewage enforcement efforts into a committee known as Council of Government (COG) which was charged with the responsibility of enforcing and managing sewer related ordinances. Plaintiffs allege that in the summer of 1993 they were informed that despite having received prior sewage and subdivision approval from the Township, the Township and COG were rescinding the approval of the subdivision since the Planning Module had never been submitted to DER by the Township for DER's approval. Plaintiffs allege that further, COG would not approve the plan because Hall, who performed the percolation tests, was about to be decertified for performing improper and erroneous testing.

Plaintiffs allege that upon reviewing their Planning Module, COG determined that the percolation tests performed by Hall were not stable and therefore could not substantiate the issuance of permits for feasible on-lot sewage disposal systems.

Plaintiffs allege that upon reviewing plaintiffs' Planning Module, and based upon the fact that defendant Hall had repeatedly submitted erroneous tests results on prior occasions, COG sent representatives to the test site to again perform the percolation tests previously performed by Hall. Plaintiffs allege that these new tests were performed on August 12, 1993 and purportedly indicated that the percolation tests originally performed by Hall were erroneous and did not reflect conditions present in the soil. COG and the Township therefore rescinded the approval of the original subdivision plan of the plaintiffs.

Plaintiffs allege that as a result of defendants' acts, they were forced to sell the property as one parcel for an amount far below the value of the property as subdivided.

Plaintiffs allege that Hall acted arbitrarily and irrationally in performing percolation tests on the subdivision, in reporting the percolation tests results, in performing percolation tests when he was not qualified to do so, in reporting the results of percolation tests when he was not qualified to do so, in approving planning modules in violation of Pennsylvania law and DER regulations, and in failing to report that the results of the percolation tests showed that the property was not suitable for on-lot sewage disposal.

Plaintiffs allege that the Township and Jones acted arbitrarily and irrationally in failing to forward the subdivision plans and Planning Module to DER as required by the Pennsylvania Sewage Facilities Act, in failing to advise the plaintiffs of the lack of approval for the plaintiffs' subdivision and the fact that neither sewage nor building permits could issue for any lot covered by plaintiffs' subdivision, and in failing to obtain the minimum training, knowledge and skill necessary "to complete the duties of Township secretary."

Plaintiffs allege that the Township acted arbitrarily and irrationally in failing to adequately train Hall for the performance of his duties as sewage enforcement officer, "thus reflecting a deliberate indifference to the rights of landowners and a deliberate indifference to the requirements of the Pennsylvania Sewage Facilities Act", in following a course of action with regard to planning modules and subdivision plans which was in violation of Pennsylvania state law and DER's regulations in continuing to employ Hall as a sewage enforcement officer when it knew that Hall was incapable of performing adequate percolation tests, and in failing to adequately train Jones for the performance of his duties as Township secretary, thus reflecting a deliberate indifference to the requirements of the Pennsylvania Municipalities Planning Code and the Pennsylvania Sewage Facilities Act.

Plaintiffs allege that as a result of the above acts, they expended money in preparing their subdivision and attempting to sell the four parcels of land on the basis that they were subdividable. Plaintiffs allege that as a result of these acts they were unable to consummate the sale with the four prospective buyers with the result that they suffered lost profits from these sales as well as loss profits due to the fact that the land had to be sold as one parcel rather than four subdivided parcels. Plaintiffs allege that as a result of these acts, they have been required to expend additional monies to retest the land to attempt to bring it into conformance with DER regulations as well as in relisting the land for sale as one parcel.

Plaintiffs allege that the defendants' acts constitute a pattern of arbitrary and/or irrational government action which deprived the plaintiffs of substantive due process and procedural due process in violation of the due process clause of the Fourteenth Amendment. Plaintiffs allege that defendants acted under color of law, and acted arbitrarily, irrationally, willfully, knowingly and with specific intent to deprive the plaintiffs of their rights under the Fourteenth Amendment and therefore violated substantive and clearly established rights secured to the plaintiffs under 42 U.S.C. § 1983 and by the Fourteenth Amendment. Plaintiffs request both punitive and compensatory damages.

■ After the pleadings are closed, a motion for judgment thereon may be made by any party. Rule 12(c), Fed.R.Civ.P. A motion for judgment on the pleadings is governed by the same standards that apply to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), Fed.R.Civ.P. *Haddock v. Christos*, 866 F.Supp. 170, 172–173 (M.D.Pa.1994). The court must construe the pleadings in the light most favorable to the nonmovant, draw all reasonable inferences in that party's favor, and take as admitted all well pleaded material allegations of the complaint. *Madonna v. United States*, 878 F.2d 62 (2nd Cir.1989); 2A Moore's Federal Practice ¶ 12.15.

■ Defendants move for judgment on the pleadings first with respect to the allegations in the complaint that defendants' actions have denied them *procedural* due process. As defendants argue, to prevail on a procedural due process claim, the plaintiffs must show that the Commonwealth of Pennsylvania does not provide reasonable remedies to rectify the legal error by a local administrative body. *DeBlasio v. Zoning Board of Adjustment for West Amwell Township*, 53 F.3d 592, 597 (3d Cir.1995). When a state affords a full judicial mechanism with which to challenge an administrative decision, the state provides adequate due process, *whether or not the plaintiff avails himself or herself of the provided appeal mechanism. Id.* In *DeBlasio*, the Court affirmed the dismissal of plaintiffs' procedural due process claim after determining that New Jersey had an adequate judicial process for challenging adverse zoning decisions.

The Commonwealth of Pennsylvania provides a statutory framework for property owners to challenge erroneous land use decisions. The Pennsylvania Sewage Facilities Act, 35 Pa.C.S.A. § 750.1 *et seq.* provides that anyone aggrieved by an action of a sewage enforcement officer in granting or denying a permit shall have the right within thirty days after receipt of notice of the action to request a hearing before the local agency. Revocation of permit shall occur

only after notice and opportunity for a hearing has been given to the permittee. *Id.* at 750.16(a). If unsuccessful at the administrative level, the property owner may appeal to the court of common pleas. *Consumer Investment Fund v. Supervisors of Smithfield Township,* 110 Pa.Cmwlth. 413, 532 A.2d 543 (1987). Plaintiffs did not avail themselves of these remedies and therefore cannot now raise a denial of due process claim in connection with the allegations in the complaint. See *DeBlasio,* supra, at 597; *Harman v. Wetzel,* 766 F.Supp. 271 (E.D.Pa.1991).

Plaintiffs argue however that they were not required to avail themselves of the procedure under § 750.16(a) because they brought this action not only against the sewage enforcement officer, Hall, but also against the Township. Plaintiffs argue that the provisions of § 750.16 which were in effect within the time frame of the present action related only to challenging the action of the sewage enforcement officer and not the Township. Plaintiffs argue that "significantly, § 750.16 as recently amended in December 1994 now includes the action of a 'local agency' which is defined as a 'municipality' 35 P.S. 750.2. The fact that 'local agency' was initially omitted from the language of § 750.16 clearly demonstrates that its requirements were not intended to apply to municipalities."

This argument is not convincing. The sewage enforcement officer acts for the Township. It is alleged in the complaint that Hall was the sewage enforcement officer for the Township. In *Consumer's Investment Fund,* supra, a case decided before the 1994 amendments, the action was brought against the board of supervisors of *Smithfield Township* who upheld the (non-party) sewage enforcement officer's decision denying a holding tank permit after plaintiffs had previously applied for an on-lot sewage system. Plaintiffs appealed to the court of common pleas which dismissed the appeal, concluding that plaintiffs' recourse was an appeal to the Environmental Hearing Board. The court in *Consumer's Investment Fund* noted that the sole issue presented for determination was whether plaintiffs were required to appeal the board's denial of their holding tank permit to the court of common pleas or to the Environmental Hearing Board. The court noted that since the denial of plaintiffs' holding tank permit "was solely the action of a local agency—the board [of supervisors] and the SEO", the appeal was properly taken to the court of common pleas. In so holding, the court made no distinction between the township's board of supervisors and the sewage enforcement officer in the application of § 750.16.

Plaintiffs also argue that it is illogical to apply § 750.16(a) that requires a hearing in front of the local agency which in this case is the Township. Plaintiffs argue "surely the legislative intent behind § 750.16(a) would not require the local agency being charged in a complaint to sit also as the judicial body adjudicating the merits of the same complaint." [1]

This argument is also without merit. Usually, it is the actions of the sewage enforcement officer, a township employee, which are brought before the township board of supervisors for review. *See e.g. Consumer Investment Fund,* supra. If they agree with the sewage enforcement officer, it is at that point that the Township's Board would become a party to any action filed in the court of common pleas. Plaintiffs are in no different position. An appeal to the administrative agency would insure input by the plaintiffs so that they might demonstrate that any initial decision was the result of error or misunderstanding. Moreover, this procedure would result in the development of an administrative record that would facilitate court review, which is one of the purposes of requiring a resort to such remedies. Indeed, in *Consumer Investment Fund,* the common pleas court initially remanded the action to the Board of Supervisors for the purpose of making a full and complete record. *Id.* 532 A.2d at p. 544, n. 2. Thus, the plaintiffs in that

---

1. Although defendants in response to plaintiffs' argument indicate that it does not matter whether plaintiff requested a hearing pursuant to the Sewage Facilities Act or the Municipal Planning Code and that it only matters that such a procedure was available and fair, defendants give no citation to the Municipal Planning Code as an alternate means of proceeding.

action had to appear again before the board which had already ruled against them.

Finally, plaintiffs argue that in any event, this case does not center around the action of the sewage enforcement officer in granting or denying a permit, but rather the plaintiffs' claim centers upon the sewage enforcement officer's lack of expertise and training in performing percolation tests, his inaccuracies in performing the test and the Township's irrational retention of Hall when it knew or should have known of his lack of expertise, training and the like.

However, plaintiffs have brought this action pursuant to 42 U.S.C. § 1983 to vindicate the alleged violation of their rights to *procedural due process* and as later discussed, substantive due process. As discussed above, since the allegations in the complaint do not support a *procedural due process claim* because state procedural review is available, the fact that Hall was not properly trained and the like does not demonstrate a violation of the U.S. Constitution. See *Harman v. Wetzel,* supra. These same claims could be presented in any resort to state remedies.

Moreover, as hereinafter discussed, the actions of the Township in employing an untrained sewage enforcement officer is cited by plaintiffs as a denial of their *substantive due process* rights.

■ With respect to the substantive due process claim, defendants argue that in order to establish a substantive due process violation, plaintiffs must show that a fundamental property interest is implicated since *not all* property interests worthy of *procedural due process* protection are protected by the concept of *substantive due process,* citing *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir.1989). Relying on *DeBlasio,* 53 F.3d at 598 (citing *Ransom v. Marrazzo,* 848 F.2d 398 (3d Cir. 1988) and *Harman,* 766 F.Supp. at 274, defendants argue that an entitlement under state law to water and sewage services does

not constitute a protectable property interest for purposes of substantive due process. Defendants argue that because the revocation of a sewage permit does not implicate fundamental property rights, plaintiffs cannot show a violation of substantive due process and, as in *Ransom,* their challenge is limited to one of a *procedural* nature which must be pursued in state court where, as here, Pennsylvania has a procedure for review of the permit decision.

In *DeBlasio,* the Court, citing to its prior decisions, noted that while property rights for procedural due process purposes are created by state law, substantive due process rights are created by the constitution. It is true that in *Ransom,* the court held that an entitlement under state law to water and sewer services (a right for procedural due process purposes) does not constitute a protectable property interest for purposes of *substantive* due process.[2] However, the court in *DeBlasio* seemed to take that holding one step farther. The court noted that in its decision in *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), plaintiffs obtained municipal approval for a five stage subdivision building plan. After obtaining building permits for the first stage of the plan, and completing the first stage of construction, the municipality's code officer denied the plaintiffs' application for building permits to allow the plaintiffs to commence construction of the new housing units which compromised the fifth stage of the project. The code enforcement officer contended that he had denied the plaintiffs' building permit application because the plaintiffs sought to construct the fifth stage of the project before completing phases two through four. Plaintiffs, however, had never agreed to develop the project in the order suggested by the numerical sequence of the stages.

The Court in *DeBlasio* noted that in *Bello,* although the plaintiffs received relief in the state court, prior to securing such relief, they had filed a § 1983 action against the munici-

---

**2.** Although in their response, plaintiffs also cite to *Ransom* and *Koger v. Guarino,* 412 F.Supp. 1375 (E.D.Pa.1976) for the proposition that sewer service is a protected property interest for purposes of *substantive* due process, as noted by defendants in their reply brief, *Ransom* indicated

that *Koger's* application of a substantive due process analysis was fundamentally misplaced, and the section of the *Ransom* decision cited by plaintiff had to do with property interests that are protected by *procedural due process.*

pality and the individual municipal officials in a federal court in which they alleged that a number of the defendant officials had improperly influenced the decision to deny the plaintiffs' building permit application. The defendants moved for summary judgment, presenting evidence that the building permit denial had issued solely because the plaintiff sought to undertake the fifth stage before developing stages two through four. In opposition, the plaintiffs presented evidence indicating that certain town council members had personal animosity towards one of the plaintiff's employees and that various defendant members of the town council had pressured members of town council to hinder the plaintiff's building project so long as the plaintiffs employed a particular employee.

The *DeBlasio* court noted that in *Bello,* the court reversed the district court's grant of summary judgment in connection with plaintiff's substantive due process claims. It explained that a deliberate and arbitrary abuse of government power violates an individual's rights to substantive due process and that the plaintiffs had presented evidence from which a fact-finder could reasonably conclude that certain counsel members improperly interfered with the process by which the municipality issued building permits and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. The court noted that while the defendants in *Bello* claimed that the building was denied because of plaintiff's failure to build in numerical sequence, thus presenting an arguably rational ground for the denial of the permit, it was for the fact-finder to resolve this dispute. The court noted that DeBlasio had also made allegations that, if proven, would establish a similar violation of his right to be free from *arbitrary* and *capricious* action affecting his use and enjoyment of property (conflict of interest, improper motive and pressure tactics by the Secretary of the Zoning Adjustment Board to deny DeBlasio's appeal so as to secure a tenant for a family owned building).

Thus, in *DeBlasio,* the court held that in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, the landowning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily, capriciously or irrationally reached. The *DeBlasio* court noted that where a plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection.

In responding to the dissent's "legitimate concern" that this standard would invite landowners into any federal court to challenge even the most mundane and routine zoning decision, the *DeBlasio* court noted that the standard articulated is implicit in its prior decisions which have not overburdened the federal court's by inviting meritless landowner suits. The Court went on to state that "Moreover, we note that by way of analogy that persons denied licenses required for the practice of certain occupations are not required to demonstrate entitlement to the license sought in order to state a substantive due process claim. To state a substantive due process claim such persons need only assert that the license sought was arbitrarily denied."

Thus, although entitlement to sewage services does not in itself constitute a protectable property interest for purposes of substantive due process, where a decision of the type involved in this case impinges on a landowner's use and enjoyment of property, the landowning plaintiff states a substantive due process claim where it is alleged that the decision limiting the intended land use was arbitrary, capriciously or irrationally reached.

■ Defendants argue however that plaintiffs have not alleged scienter sufficient to constitute a constitutional violation. They argue that plaintiffs must allege that the adverse action was taken for "reasons unrelated to the merits of the application" citing *Bello,* supra. Defendants argue that the complaint does not allege an improper motive, that is, that the defendants revoked the sewage permit under false pretext. Defendants argue that rather, plaintiffs concede that the revocation was driven by the discovery that the first percolation test was inaccu-

rate, not any particular animus toward the plaintiffs. Defendants argue that the complaint alleges merely that the Township discovered the first set of percolation tests to be inaccurate and after retesting, the Township through COG decided that the lot was unsuitable for septic tanks and so advised the plaintiffs. Defendants argue that the fact that Hall may have performed the percolation test negligently, or that the Township negligently failed to forward the plan to DER, does not amount to pretext sufficient to support a substantive due process claim.

Plaintiffs respond that plaintiffs' complaint meets the minimum requirements for a substantive due process challenge in that they allege that defendants' arbitrary and irrational acts, *as specified in the complaint* (Doc. No. 16, p. 7), impinged upon their use and enjoyment of the property to the extent that they cannot subdivide the property. Plaintiffs argue that they "must only show that the land use regulation was arbitrary or irrational." (Doc. No. 16, p. 8). Plaintiff argues that in *Bello*, the Court indicated that it would not define the outer limits of the showing necessary to demonstrate that a government action was arbitrary, irrational *or* tainted by improper motives. Plaintiffs argue that notably the Court used the conjunction "or", thus implying that a plaintiff may allege arbitrary, irrational *or* improper behavior. Plaintiffs argue therefore that there is no requirement that plaintiffs allege that defendants acted intentionally or with scienter, but rather it is enough for the plaintiffs to allege that these actions were arbitrary or irrational.

Thus, the question arises as to whether the use of the conclusory terms "arbitrary or irrational" in conjunction with the other allegations in the complaint is sufficient to survive a motion for judgment on the pleadings which, as noted above, is governed by the same standard as a motion to dismiss for failure to state a claim. Both *Bello* and *DeBlasio* involved the grant of summary judgment by the district court after the parties presented evidence, undoubtedly developed on discovery, to *pierce the allegations in the complaint* in an attempt to show that there was or was not a triable issue of material fact and that the moving party was entitled to judgment as a matter of law. *On the basis of this evidence*, the court of appeals reversed the district court's granting of the motions for summary judgment and noted that there was a triable issue of fact with respect to the substantive due process issue of arbitrary and capricious government action as it related to the decisions affecting a property interest.

Similarly, there has been time for discovery in the instant case.[3] Thus, had defendants filed their motion as one for summary judgment, with or without supporting evidence, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), it would have been incumbent upon the plaintiffs to come on with evidence to show that there is a triable issue of fact regarding arbitrariness or capriciousness. In addition, even though the instant motion is styled as a motion for judgment on the pleadings, had either or both parties submitted to the court evidence developed on discovery, the court could have treated this motion as one for summary judgment and considered evidenced developed on discovery on the question here presented. Rule 12, Fed.R.Civ.P., 2A Moore's Federal Practice, ¶ 12.15. Neither party has presented such evidence.

However, in lieu of such evidence, plaintiffs have elected to rely on the allegations in the complaint with respect to the manner in which they feel defendants' actions were ar-

3. The case management plan order established February 29, 1996 as the date for completion of discovery. The instant motion was filed on December 22, 1995 and plaintiffs, after having obtained an extension of time, responded on January 29, 1996. A reply was filed on February 6, 1996. Plaintiffs have not contended that they need more time for discovery to respond to defendants' motion. Instead, on February 23, 1996, plaintiffs filed a motion for an extension of the discovery deadline on the basis that plaintiffs' deposition scheduled for February 12, 1996 was postponed at plaintiffs' counsel's request because he was "called for trial", and that defendants' depositions also were to be taken. When the court inquired as to whether the deposition testimony would have any affect on the pending motion, plaintiffs' counsel replied that the request for an extension to take these depositions was made to allow time for discovery in the event the motion was decided in plaintiffs' favor.

bitrary and intentional and presumably would offer evidence supporting these allegations at any trial. Plaintiffs state in their brief that their complaint does allege that defendants' arbitrary and irrational acts, *as specified in the complaint,* impinged upon their use and enjoyment of the property. (Doc. No. 16, p. 7). The acts as specified in the complaint indicate that twice in 1988 Hall performed percolation tests on plaintiffs' lands and as a result of these tests, Hall reported that the lots were suitable for on-lot sewage disposal systems; that in March 1990, the Township, apparently through defendant Jones, found plaintiffs' subdivision plan to be in conformance with all regulations and plans including the Township sewage plan and two weeks later, the Susquehanna County Planning Commission also approved the subdivision plan; that the Township through its secretary failed to forward the approved subdivision plan to DER and that this failure was not known to plaintiffs; that after the Township and the Susquehanna County Planning Commission approved plaintiffs' subdivision plan, they consolidated their sewage enforcement efforts into a committee known as Council of Government (COG); that in the summer of 1993 plaintiff was advised by COG and the Township that approval of the subdivision was being rescinded because (a) the subdivision plan had never been submitted to DER by the Township for DER's approval and (b) COG could not approve the plan because it had determined that percolation tests performed by Hall "were not stable and therefore could not substantiate the issuance of permits for feasible on-lot sewage disposal systems and that Hall was about to be decertified for performing improper and erroneous testing; that COG then sent representatives to the site to again perform percolation tests in August 1993 which disclosed that the percolation tests previously performed by Hall were erroneous and did not reflect conditions present in the soil; and that as a result of these tests, COG and the Township rescinded the approval of the original subdivision plan.

4. In fact, plaintiffs allege that "Hall had repeatedly submitted erroneous test results on prior occasions" (¶ 18), and that the failure to train

These alleged facts, even if later proved, would not give rise to the arbitrary and capricious action of the type set forth in *DeBlasio* and *Bello,* based on partisan, political or personal impropriety in interfering with the process by which the permit was issued and then rescinded. The fact that Hall performed percolation tests, reported their results as satisfactory and later was found to have conducted tests that "were not stable" which could lead to his decertification, and that later tests by a newly organized group indicated that the property was not suitable for on-lot sewage disposal systems shows no arbitrary or capricious action directed at the plaintiffs with the intent to deny them a permit for improper means.[4] From what appears in the complaint, the Township relied on Hall's tests in approving the plaintiffs' subdivision application until a newly formed county and township group (COG) determined that these tests were not properly performed which resulted in the Township rescinding the permit. This also does not permit an inference of improper interference of the type set forth in *DeBlasio* and *Bello.*

■ Although plaintiffs apparently conclude from these alleged facts that the Township did not properly train Hall and knew or should have known that his test results were questionable, there is not one fact to support these ultimate conclusions of fact and as noted above, plaintiffs apparently through discovery have uncovered none. Moreover, the failure to properly train would infer negligence and not a civil rights violation. In addition, the fact that the Township and its secretary failed to forward the initial approval to DER, without more, would indicate negligence. Certainly it could not be inferred from the mere failure to forward the subdivision plans to DER that there was arbitrary and capricious action aimed at denying plaintiffs the right to subdivide.

Plaintiffs however culls from the above cases the word "irrational" and argues that because the word "or" was used between "arbitrary, capricious or irrational", they

Hall reflected a "deliberate indifference to landowners" in general.

have pled a claim on the "facts set forth in the complaint." In its usual sense, irrational denotes that something was done without reason, illogically or perhaps for no reason. The event which gives rise to the filing of this lawsuit was the recision of the permit, since without the permit there would be no purpose in sending a disapproved plan to DER. Certainly the recision of the permit cannot be said to be illogical or not based in reason. As plaintiffs themselves allege, when the county and the Township later consolidated their sewage enforcement efforts into COG, it was that group which questioned the testing previously performed and which performed new tests which showed that plaintiffs' plan was not suitable for on-site sewage systems. Plaintiffs make no claim that the subsequent tests were incorrect or that they are now entitled to a permit. That being the case, plaintiffs are in no different position, as far as use of the land is concerned, than they would have been had the tests been properly performed in the first place. Although the defendants may have bungled the tasks leading to the initial approval of the application and this approval put plaintiff to wasted effort and expense in finding buyers for the lots in question, the facts specifically referred to by plaintiffs in the complaint do not point to arbitrary, capricious or even irrational action in the rescission of the permit which give rise to this lawsuit. To hold otherwise would be to hold that any mistake or bungling in connection with an application of this nature arises to the point of a substantive due process constitutional violation.

It appears therefore that defendants are entitled to judgment on the pleadings both with respect to the procedural and substantive due process claims. That being the case, it is not necessary reach defendants' "ripeness" argument. (See Doc. No. 14, p. 7).