**Raymond NICOLETTE, Plaintiff,**

v.

**Christopher CARUSO, Assistant Manager for the Township of Findlay, et al, Defendants.**

**Civil Action 02–1368.**

United States District Court,
W.D. Pennsylvania.

Nov. 4, 2003.

Raymond Nicolette, Lisbon, OH, Pro se.

Vicki L. Beatty, Stephen M. Pincus, Campbell, Durrant & Beatty, Pittsburgh, PA, for Defendant.

### MEMORANDUM ORDER

CONTI, District Judge.

### Background

Pending before this court is the motion by defendants Christopher Caruso, Gary J. Klingman, Raymond L. Chappell, Jr. and Alan T. Shuckrow ("defendants") to dismiss (Doc. No. 3) the complaint of plaintiff Raymond Nicolette ("plaintiff") and plaintiff's motion to supplement the civil action complaint (Doc. 15). For the reasons stated below, defendants' motion to dismiss is GRANTED as to all claims except plaintiff's substantive due process claims founded on the Fourteenth Amendment to the United States Constitution and on Article I, sections 1 and 26 of the Pennsylvania

Constitution (the "remaining claims"). As to the remaining claims, defendants' motion to dismiss is DENIED. Plaintiff's motion to supplement the civil action complaint is DENIED as moot.

### Facts Accepted As True For Purposes of Deciding the Motion

Plaintiff Raymond Nicolette, an Ohio resident, owns and operates Mazzaro Coal and Disposal Company, Inc., a Pennsylvania corporation with its principal place of business in Findlay Township, Pennsylvania, and Empire Environmental, Inc., an Ohio corporation that disposes construction and demolition waste in Ohio. Pl. Compl. ¶¶ 11–13. Plaintiff also owns 188 acres of land in Findlay Township, Pennsylvania, alongside the south end of U.S. Route 30. *Id.* ¶ 16. The property abuts that of his ex-wife, Carol Nicoletti ("C.N."), who owns 107 acres of land on the north side of U.S. Route 30. *Id.* ¶ 17. C.N. owns and operates Virtual Holdings, Inc. d/b/a Empire Roll–Off ("Empire"), a Pennsylvania corporation with its principal place of business in Findlay Township, Pennsylvania. *Id.* ¶ 13. The parcels of property owned by plaintiff and C.N. have been continuously used for waste management purposes since the 1960s, when Mike Mazzarro ("Mazzarro"), the former owner of both parcels and C.N.'s father, began a sanitary landfill operation. *Id.* ¶ 19.

In 1972, when landfill operations on the north side of U.S. Route 30 ceased, Mazzarro opened up a new landfill on part of what is now plaintiff's parcel. *Id.* ¶¶ 20–21. The landfill initially paid Findlay Township four percent (4%) of gross fees, a figure that was later increased to ten percent (10%). The landfill closed in 1987.[1] *Id.* ¶ 21. Plaintiff continued to operate businesses engaged in the collection and hauling of construction and demolition waste materials, using a landfill operated

---

**1.** Although the complaint is unclear, at some point between 1972 and 1987, plaintiff ac-

quired the property encompassing the landfill from Mazzaro.

by Browning–Ferris Industries, Inc. ("BFI") in Findlay Township to dispose of his materials. *Id.* ¶ 22. Finding better disposal rates at a Columbiana County, Ohio landfill, plaintiff discontinued disposing his waste at BFI's landfill. The discontinuation reduced the amount of the gross receipts percentage fee paid to Findlay Township by BFI. *Id.* ¶ 23.

Plaintiff claims that his discontinuation of waste disposal in Findlay Township led to a "retaliatory campaign of unrelenting harassment and abuse" by Findlay Township, through defendants,[2] against plaintiff and his businesses. *Id.* ¶ 24. Specifically, he claims that Findlay Township officials, agents and employees targeted him for selective enforcement of Findlay Township regulations and denied his plans to construct and operate a public parking facility, golf driving range, and collection and recycling facility. *Id.* ¶¶ 25–39. Plaintiff contends he spent thousands of dollars in environmental testing, architectural and engineering diagrams and maps, and legal fees in attempting to comply with numerous Findlay Township requests for revisions, qualifications, and certifications regarding the projects. *Id.* ¶ 26. Plaintiff further alleges that Findlay Township prevented his business opportunities because part of a proposed Pennsylvania Turnpike connector is planned to proceed through his property. Plaintiff contends that defendants' actions in preventing business activities on his property will preclude the value of the real estate from rising, thereby permitting the Pennsylvania Turnpike Commission to obtain plaintiff's property at a price lower than what he should be paid. *Id.* ¶ 75.

A joint proposal for a golf course driving range was submitted by plaintiff and

C.N. to Findlay Township in 1995. *Id.* ¶ 27. The property was owned by C.N., but was apparently leased to plaintiff for a term of 99 years. *Id.* Appendix 1. Plaintiff estimates that he spent over $40,000 in costs on the project, which was abandoned after the Environmental Protection Agency and the Pennsylvania Department of Environmental Protection could not "absolutely" guarantee that the site would not pose a material risk to public health. *Id.* ¶ 29. Earlier, both agencies had declared that the site would not pose a material risk to public health. *Id* ¶ 28. Plaintiff alleges that Findlay Township, through the actions of defendants, "arbitrarily and capriciously" required that he present verification meeting the absolutist standard. Neither agency, however, could provide the verification required by Findlay Township and he was unable to secure Township approval for the driving range. *Id.* ¶ 29. Plaintiff alleges that the "absolute" standard could not be met by any site and that the standard was therefore arbitrary and capricious.

Plaintiff next attempted to gain approval to establish a collection and recycling facility on the same site. *Id.* ¶ 31. Findlay Township denied his permit request, an action plaintiff states "wholly lacked' any rational basis." *Id.* ¶ 32. The township also denied plaintiff a permit to reduce mine drainage from his acreage. *Id.* ¶ 34. Following this event, plaintiff contends that the township, acting through defendants, attempted to prevent C.N. and him from operating Empire by seeking an injunction in the Court of Common Pleas of Allegheny County. *Id.* ¶ 35. This litigation resulted in a consent decree entered into between the township and Empire

---

**2.** There are four individual defendants in this matter: Christopher Caruso ("Caruso"), assistant manager for Findlay Township; Gary J. Klingman ("Klingman"), Findlay Township manager; Raymond L. Chappell, Jr. ("Chappell"), member of the Findlay Township board of supervisors; and Alan T. Shuckrow ("Shuckrow"), solicitor for Findlay Township.

that permitted the continued operation of Empire so long as no collection and recycling facility was opened on C.N.'s property. *Id.* ¶ 36.

On March 1, 2002, Caruso, acting in his capacity as zoning administrator for Findlay Township, issued an enforcement order against plaintiff, Mazzaro Coal and Disposal Co., and C.N. d/b/a Empire for violating the consent decree. *Id.* ¶ 37–38. On April 18, 2002, Shuckrow, acting in his capacity as solicitor for Findlay Township, filed a civil complaint against plaintiff, C.N., Empire, and Mazzaro Coal and Disposal Co. At a July 10, 2002 hearing before an Allegheny County district justice, defendants produced a deed identifying Mazzaro Coal and Disposal Company as the owner of the property upon which the alleged violation occurred. Over the objection of the defendants, the district justice dismissed plaintiff, C.N. and Empire from that civil complaint.[3]

### Procedural History

Plaintiff, acting *pro se*, brought claims against defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Ninth, and Fourteenth Amendment rights under the Constitution of the United States. Plaintiff also asserts anti-trust claims pursuant to the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Clayton Act, 15 U.S.C. § 12 *et seq.* Plaintiff further invokes the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, bringing various claims under the Pennsylvania Constitution,[4] as well as tort claims for wrongful use of civil proceedings[5] and malicious prosecution. (Doc. No. 1).[6] Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 3).

### Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In deciding a motion to dismiss the court is not opining on whether the plaintiff will be likely to prevail on the merits. Rather, when considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002). The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost,* 1 F.3d at 183 (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990)). A motion to dismiss will only be granted if it appears that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Id.* Moreover, the court is under a duty to examine the complaint independently to determine if the factual allegations set forth could provide relief under any viable legal theory. *Conley v. Gibson,*

---

**3.** The dismissal of these parties has been a point in contention between the parties throughout this case because, although the dismissal of plaintiff as a party in the underlying action before the district justice was noted on the record, no formal notice of judgment originally followed the proceedings. (Doc. No. 13). The court subsequently received a notice of judgment dismissing plaintiff as a defendant in the state civil proceedings (Doc. No. 14). Defendants indicated that Findlay Township appealed the dismissal to the Court of Common Pleas. (Doc. No. 16).

**4.** Specifically, plaintiff alleges violations of PA. CONST. ART. I, §§ 1, 8, 12, 17, 25, and 26.

**5.** Pennsylvania has a statute governing wrongful use of civil proceedings, 42 PA. CONS. STAT. ANN. § 8351 (the "Dragonetti Act").

**6.** These are all the claims explicitly stated in plaintiff's complaint, or which the court could discern from plaintiff's somewhat rambling *pro se* allegations.

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### *Discussion*

■■■ While this court is mindful that *pro se* plaintiffs are not held to as high of a standard as litigants that are represented by counsel, a *pro se* plaintiff "must still plead the essential elements of his claim and is not excused from conforming to the standard rules of civil procedure." *See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, plaintiff, even though he is *pro se,* must set forth sufficient information that would allow this court to infer that, accepting plaintiff's allegations as true, defendants violated plaintiff's federal rights. *Kost,* 1 F.3d at 183. Because plaintiff is *pro se* and subjected to "less stringent standards than formal pleadings drafted by lawyers," this court also considers plaintiff's response to defendants' motions to dismiss. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). By reason of plaintiff's *pro se* status, the court considered the information plaintiff wishes to use to supplement his complaint in determining the motion to dismiss and thus plaintiff's motion to supplement the civil action complaint is denied as moot. *See also Gray v. Poole,* 275 F.3d 1113, 1115 (D.C.Cir.2002) (noting case law holding that a district court abused its discretion when if failed to consider the *pro se* plaintiff's complaint in light of his reply to the motion to dismiss).

**A. Plaintiff failed to state a claim based upon the Fourth, Fifth and Ninth Amendments of the Constitution of the United States.**

1. *Fourth Amendment to the United States Constitution*

■■■ The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

For the Fourth Amendment to be implicated there must be a "search" or "seizure" by government agents. *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). "A search occurs 'when an expectation of privacy that society is prepared to consider reasonable is infringed.'" *Id.* a 469, 105 S.Ct. 2778. The United States Supreme Court held in *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) that "[t]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." The Fourth Amendment does not require that a public official be viewed any differently than a member of the public. Thus, the Fourth Amendment does not protect against observation by a public official of what is observable by the general public. *See Ehlers v. Bogue,* 626 F.2d 1314, 1315 (5th Cir.1980) (citing *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)). The observation of items knowingly exposed to public view is not a "search" under the Fourth Amendment because there is no reasonable expectation of privacy in their contents.

■■■ In this case, plaintiff's only possible claim under the Fourth Amendment is based upon what he claims was a pattern of surveillance by Findlay Township police and zoning officials in an attempt to find

a zoning violation on his property. Plaintiff fails to demonstrate any reasonable expectation of privacy to be free from the police or zoning officials driving past his property. Routine patrols of an area exposed to public view, along a major interstate (U.S. Route 30), do not infringe upon plaintiff's Fourth Amendment rights. There are no allegations that the police or township officials encroached upon any area of plaintiff's property or conducted a search without a warrant. For these reasons, plaintiff's Fourth Amendment claim must be dismissed.

### 2. Fifth Amendment to the United States Constitution

██ Plaintiff alleges that defendants, officials of Findlay Township, engaged in practices that violated his substantive and procedural due process rights pursuant to the Fifth Amendment of the United States Constitution. Plaintiff's claim must be dismissed because the due process clause of the Fifth Amendment does not directly apply to actions of state officials. *See Huffaker v. Bucks County District Attorney's Office,* 758 F.Supp. 287, 290 (E.D.Pa. 1991). Notably, "[t]he limitations of the Fifth Amendment restrict only federal government action." *Nguyen v. U.S. Catholic Conference,* 719 F.2d 52, 54 (3d Cir.1983). Because plaintiff alleges violations of his substantive and procedural due process by *state* officials, not federal officials, plaintiff's claim founded on the Fifth Amendment to the United States Constitution must be dismissed. These due process rights, however, are implied under the Fourteenth Amendment, which will be addressed later in this opinion.

### 3. Ninth Amendment to the United States Constitution

██ The Ninth Amendment to the United States Constitution provides:

The enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.

The Ninth Amendment was drafted as part of the Bill of Rights primarily to protect against the danger that an enumeration of fundamental civil liberties could actually limit fundamental rights. *See* THE FEDERALIST 84 (HAMILTON). The amendment is viewed as a restraint on the federal government from acting to expand its powers on rights not listed in the Bill of Rights. The amendment "states *but a rule of construction,* making clear that a Bill of Rights might not by implication be taken to increase the powers of the national government in areas not enumerated, and that it does not contain within itself any guarantee of a right or a proscription of an infringement." THE CONSTITUTION OF THE UNITED STATES OF AMERICA: ANALYSIS AND INTERPRETATION 1412 (Johnny Killiam, ed., 1987) (emphasis added). As such, the Ninth Amendment standing alone does not confer substantive rights for purposes of pursuing a constitutional claim. *See Metz v. McKinley,* 583 F.Supp. 683 (D.C.Ga. 1984), *aff'd,* 747 F.2d 709 (11th Cir.1984). Specifically, section 1983 civil rights claims premised on the Ninth Amendment "must fail because there are no constitutional rights secured by that amendment." *Charles v. Brown,* 495 F.Supp. 862 (D.C.Ala.1980). Plaintiff cannot state a claim based upon the Ninth Amendment to the United States Constitution, and this claim must therefore be dismissed.

### B. Plaintiff failed to state a claim based upon violations of the Sherman Act and the Clayton Act.

#### 1. Sherman Act

██ Plaintiff's complaint alleges that defendants entered into a conspiracy in the restraint of trade in violation of the Sher-

man Act, 15 U.S.C. § 1 *et seq.* The Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Plaintiff must demonstrate four elements in order to state a claim under the Sherman Act:

(1) that Defendants contracted, combined, or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that Plaintiff was injured as a proximate result of that conspiracy.

*Tunis Bros. Co., Inc. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir.1991).

■■■■ Federal courts must be careful in determining whether to dismiss a suit brought under the Sherman Act. On one hand, claims brought under the Sherman Act must satisfy a heightened pleading requirement. General allegations of a conspiracy are insufficient, and a plaintiff must include in his complaint a statement of facts constituting the "conspiracy, its object and accomplishment." *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo Inc.,* 836 F.2d 173, 182 (3d Cir.1988). The court, however, is cautioned in granting a motion to dismiss an antitrust claim, because "the proof [of the conspiracy] is largely in the hands of the alleged conspirators." *Hosp. Bldg. Co. v. Trustees of Rex,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

■■■■ Nonetheless, a plaintiff is required to allege a "contract, combination or conspiracy in restraint of trade" in order to survive a motion to dismiss. These three types of activity, termed "concerted action," are the very essence of a claim under section 1 of the Sherman Act, 15 U.S.C. § 1. *Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 999 (3d Cir. 1994), *cert. denied,* 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). In fact, section 1, which deals with "concerted action" in the restraint of trade, is distinguished from section 2, which covers monopolization by a single entity. Thus, section 1 requires two or more entities to act in concert through a contract, combination, or conspiracy to restrain trade. Section 1 does not reach conduct that is "wholly unilateral." *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

■■■■ In this regard, the court notes the following paragraphs in plaintiff's complaint where he seeks to allege a violation of the Sherman Act:

71. Defendants SHUCKROW and CARUSO have abused and perverted legal process against NICOLETTE by commencing a multitude of enforcement actions, lawsuits and the like that are characterized more by their quantity than their quality.

72. Defendants CHAPPELL, KLINGMAN, CARUSO and SHUCKROW have conducted and encouraged a Township policy aiming to drive NICOLETTE out of business for the improper purpose of increasing the area market share of business to Browning Ferris Industries (BFI), a competitor of NICOLETTE in the waste industry.

73. Defendants CHAPPELL, KLINGMAN, CARUSO and SHUCKROW strive to steer the construction and demolition hauling business away from NICOLETTE and toward BFI for the purpose of increasing Township revenues through collection of its sanitary landfill fee.

74. The activities of Defendants CHAPPELL, KLINGMAN, CARUSO and SHUCKROW adversely impact interstate commerce between Ohio and Pennsylvania within the meaning of the Sherman Act, 15 U.S.C. § 1 and the Clayton Act, 15 U.S.C. § 12[sic] and constitutes an ongoing antitrust conspiracy in restraint of trade.

These allegations fail to demonstrate the "concerted action" requirement pursuant to the Sherman Act. Plaintiff fails to allege any type of contract or formal agreement between defendants and BFI or any other entity. There is also no factual allegation of a conspiracy. Plaintiff seems to interpret section 1 of the Sherman Act to require proof of a conspiracy between separate actors within the same entity. The Sherman Act, however, clearly requires "concerted action"—in other words, "two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit." *Alvord–Polk, Inc.*, 37 F.3d at 1000. Here, the alleged conspiracy attempted to be pled by plaintiff refers to unilateral action within the confines of a single entity: Findlay Township. The allegation that defendants attempted to increase BFI's market share, without any claims that BFI engaged in "concerted action" with defendants is insufficient to state a claim under section 1 of the Sherman Act. Therefore, defendants' motion to dismiss as to the Sherman Act claim is granted.

### 2. *Clayton Act*

■ Plaintiff also states in his complaint that defendants violated the Clayton Act. Section 4 of the Clayton Act, 15 U.S.C. § 15 *et seq.*, provides a mechanism for plaintiffs to recover treble damages for violations under the act. The Local Government Antitrust Act ("LGAA"), 15 U.S.C. § 35, however, grants local government officials immunity from damages under the Clayton Act. That section states:

No damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity.

The term "local government" is defined under the LGAA as:

(A) a city, county, parish, town, township, village, or any other general function governmental unit established by State law, or

(B) a school district, sanitary district, or any other special function governmental unit established by State law in one or more States[.]

15 U.S.C. § 34. Because Findlay Township is a "township" under the laws of the Commonwealth of Pennsylvania, and because the complaint alleges that defendants were acting in an official capacity as agents of the township, plaintiff is precluded from seeking damages under the Clayton Act.[7] Defendants' motion to dismiss the Clayton Act claim is granted.

### C. Plaintiff failed to state a cause of action for a violation of procedural due process under the Fourteenth Amendment to the Constitution of the United States.

■ Plaintiff claims that defendants' actions denied him his procedural due pro-

---

7. The United States Court of Appeals for the Tenth Circuit determined that the LGAA does not foreclose a plaintiff from seeking declaratory or injunctive relief under the Clayton Act. *Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1477 (10th Cir.1990). Plaintiff, however, does not ask for declaratory or injunctive relief in his complaint. Thus, dismissal of this claim is proper.

cess rights pursuant to the United States Constitution. A plaintiff attempting to establish a violation of his right to procedural due process must allege three elements: (1) that the defendant was acting under color of state law; (2) that the defendant deprived him of a protected property interest; and (3) that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991). In this case, although plaintiff successfully alleged the first two elements, plaintiff failed to allege the third.

▆▆▆ A state provides adequate procedural due process where it "affords a full judicial mechanism for with which to challenge the 'administrative decision'" in question. *Midnight Sessions*, 945 F.2d at 682. In *Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988), the United States Court of Appeals for the Third Circuit determined that Pennsylvania's state procedure for challenging an administrative zoning decision was sufficient to satisfy constitutional procedural due process. Specifically, the Court of Appeals stated:

> It is the law in this Circuit that a state provides adequate due process when it provides "reasonable remedies to rectify a legal error by a local administrative body." Pennsylvania clearly provides such remedies, as this case exemplifies,

and therefore plaintiffs' have no justifiable due process claim.

*Id.* at 1128 (citations omitted). Because Pennsylvania's state procedure for challenging an administrative zoning decision satisfies procedural due process, plaintiff fails to state a claim founded on a violation of procedural due process and plaintiff's claim under the Fourteenth Amendment for a violation of procedural due process must be dismissed.

**D. Plaintiff stated a claim based upon a violation of his substantive due process rights under the Fourteenth Amendment to the Constitution of the United States and Article I, sections 1 and 26 of the Pennsylvania Constitution.**

*1. Fourteenth Amendment*

▆▆ To state a claim that a municipal land use decision violates substantive due process pursuant to section 1983, plaintiff must meet two requirements. First, plaintiff must allege that the particular property interest at issue is worthy of substantive due process protection. *DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592 (3d Cir.1995), *overruled in part by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (2003) (*United Artists* did not overrule the principle for which *DeBlasio* is cited in this opinion).[8] Second, plaintiff must allege that the government's deprivation of that pro-

---

**8.** In a line of cases beginning with *Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988) and culminating with *DeBlasio*, the United States Court of Appeals for the Third Circuit held that a plaintiff was able to assert successfully that a municipal land use decision violated substantive due process rights if it were shown that municipal officials acted with "improper motive"—that is, as the *DeBlasio* court explained, where it was alleged that the decision was "arbitrarily and irrationally reached." *DeBlasio*, 53 F.3d at 601. While not overruling the essential holding of *DeBla-*

*sio* that a municipal land use decision can violate the substantive due process clause of the Fourteenth Amendment, the court in *United Artists* held that the "improper motive" standard was superceded by the United States Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In *Lewis* the Supreme Court determined that the proper standard to be applied where a plaintiff alleges that an executive action violated substantive due process is the "shocks the conscience" test. *United Artists*, 316 F.3d at 401.

tected property interest "shocks the conscience." *United Artists*, 316 F.3d at 400–401.[9]

■ In *DeBlasio*, the United States Court of Appeals for the Third Circuit engaged in an analysis of which kinds of property interests would be worthy of substantive due process protection. The court noted that not all property interests entitled to procedural due process protections would be afforded substantive due process protections. *DeBlasio*, 53 F.3d at 598. For example, entitlements under state law that would receive procedural due process protection are not necessarily protectable property interests for substantive due process protection. *Id.* (citing *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir.1988)). Only *fundamental* property interests are worthy of substantive due process protection. *DeBlasio*, 53 F.3d at 599 (emphasis in original). This holding was not overruled by *United Artists*.

■ In *DeBlasio* the court determined that ownership of real property was a protected property interest. In doing so, the court cited *Neiderhiser v. Borough of Berwick*, 840 F.2d 213 (3d Cir.1988), which held that a lessor's allegation that an exemption from a municipal zoning ordinance had been arbitrarily and irrationally denied stated a valid substantive due process claim. *DeBlasio*, 53 F.3d at 601 n. 10. The court went on to note:

> Having implied in *Neiderhiser* that a lessor possesses a property interest worthy of substantive due process protection against arbitrary and irrational governmental deprivation, an actual

property owner, *a fortiori*, possesses such an interest.

*Id.* Subsequently, the United States District Court for the Eastern District of Pennsylvania recognized that a lessee may have a substantive due process claim. *American Fabricare v. Township of Falls*, 101 F.Supp.2d 301, 309–310 (E.D.Pa.2000). Plaintiff attached to his complaint a copy of a 99–year lease agreement between C.N., as lessor, and plaintiff as lessee of the real property subject to the substantive due process claim. As a lessee of real property, plaintiff meets the first requirement of stating a substantive due process claim, a fundamental property interest worthy of substantive due process protection.

The second requirement is that plaintiff must allege conduct on behalf of the township officials that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). *Lewis* involved a section 1983 claim by the parents of a decedent who alleged that an unconstitutional deprivation of the deceased's substantive due process right to life occurred as a result of a high speed chase. In *Lewis*, the United States Supreme Court examined what standard should be applied to allegations that an executive branch official violated substantive due process. Determining that "the core of the concept" of due process was "protection against arbitrary action," the Court stated that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 845–46, 118 S.Ct. 1708. The Court concluded that "the substantive component

---

**9.** The United States Supreme Court in *Lewis* stated that the "shocks the conscience" standard encompasses "only the most egregious official conduct." *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708. The court in *United Artists* interpreted the "shocks the conscience" test as much more demanding than the "improper motive" test, and declared that the more demanding test would prevent the courts from "being cast in the role of a 'zoning board of appeals.'" *United Artists*, 316 F.3d at 400, 402. *See* the further discussion of *Lewis* below.

of the Due Process Clause is violated by executive action only where it 'can properly be characterized as arbitrary, or *conscience shocking* in a constitutional sense.'" *Id.* at 847, 118 S.Ct. 1708 (emphasis added).

The United States Court of Appeals for the Third Circuit specifically extended the *Lewis* "shocks the conscience" test to cases alleging that a municipal land-use decision violated substantive due process. *United Artists* at 394, 401.[10] *United Artists* was decided in January, 2003 and there have not been many subsequent municipal land-use decisions applying the new "shocks the conscience" standard. There, however, is at least one court which dealt with that standard. In *Associates in Obstetrics & Gynecology v. Upper Merion Township,* 270 F.Supp.2d 633, 656 (E.D.Pa.2003), the court held that the plaintiff stated a claim under section 1983 that met the "shocks the conscience" standard by alleging that zoning regulations were enforced with the intent to harm and/or restrict the business interests of the plaintiff who was a lessee.

 Plaintiff, like the plaintiff in *Associates,* alleged a course of conduct undertaken by defendants with the intent to harm and restrict his ability to carry out his business on the parcel of land he leased in Findlay Township. In a supplemental brief, plaintiff made factual allegations that the township officials engaged in a course of conduct designed to restrict plaintiff from developing the property he leased. Accepting these factual allegations as true and making inferences favorable to plaintiff for purposes of the motion to dismiss,

the court finds that, albeit this is a close question, plaintiff's complaint implicated the "shocks the conscience" test sufficiently to survive the motion to dismiss. This decision is without prejudice to the right of defendants in a summary judgment motion to present evidence that plaintiff, as a matter of law, will be unable to meet the "shocks the conscience" test. At this procedural point in the proceedings, the court is constrained to find that plaintiff's allegations concerning a substantive due process violation under the Fourteenth Amendment are sufficient to survive a motion to dismiss.

### 2. *Statute of Limitations*

 Defendants argue in their motion to dismiss that any claims relating to the development of plaintiff's proposed parking facility and driving range are barred by the statute of limitations. The statute of limitations for claims brought in Pennsylvania to enforce civil rights violations is two years. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998). The continuing violations doctrine, an equitable exception to the statute of limitations requirement, however, permits a civil rights plaintiff, under certain circumstances, to raise civil rights claims that otherwise would be barred by the statute of limitations. As explained by the United States Court of Appeals for the Third Circuit:

> [W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limi-

---

**10.** Formerly, a section 1983 plaintiff was found to state a claim that a municipal land use decision violated substantive due process if it was alleged that the municipal officials acted with an "improper motive." *See Bello v. Walker,* 840 F.2d 1124 (3d. Cir.1988). Subsequent cases had held that municipal-use

decisions violated substantive due process if made for any reason "unrelated to the merits" or with any "improper motive." *United Artists,* 316 F.3d at 400 [citations omitted]. *See also* notes 8 and 9, *supra,* and accompanying text.

tations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

*Brenner v. Local 514, United Broth. of Carpenters and Joiners of America,* 927 F.2d 1283, 1295 (3d Cir.1991).

▮ In order to determine whether the doctrine should be invoked, courts should consider at least three factors:

(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation;

(2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and

(3) degree of permanency—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell v. Palmer,* 263 F.3d 286, 292 (3d Cir.2001). A plaintiff intending to benefit from the continuing violations doctrine must establish that the defendants' conduct is "more than the occurrence of isolated or sporadic acts." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995). The key consideration is the degree of permanency. *See Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971, 981 (5th Cir.1983). When examining the permanency prong, the focus is on plaintiff and at what point in time he knew that the township officials would not permit him to develop the property he leased for any commercial purpose.

▮ In this case, plaintiff pled facts sufficient to invoke the continuing viola-

tions theory regarding defendants' alleged actions toward the property leased by plaintiff. Although plaintiff concedes in his complaint that the golf course project was abandoned in 1999, plaintiff alleges that he immediately began attempts to establish a collection and recycling facility on the same property. The subject matter of the alleged infractions—violations of plaintiff's substantive due process rights—is identical. Plaintiff further alleged in his complaint and supplemental replies an ongoing course of conduct undertaken by defendants in violation of his substantive due process rights. Plaintiff's complaint, thus, sufficiently states a claim that the alleged discrimination by Findlay Township was ongoing throughout the period in question and his conduct in continuing to attempt to develop the property denotes that he did not view the township's action as permanent until the enforcement action was commenced. Therefore, for purposes of this motion to dismiss, plaintiff will receive the benefit of the continuing violations theory in order to proceed on his section 1983 claim alleging violation of his rights to substantive due process.

### 3. Article I, sections 1 and 26 of the Pennsylvania Constitution

The Pennsylvania Supreme Court determined that "as it relates to due process guarantees, our state constitution affords no greater protection than the United States Constitution." *Coades v. Pennsylvania Board of Probation and Parole,* 84 Pa.Cmwlth. 484, 480 A.2d 1298 (1984). Thus, because plaintiff alleges a violation of his substantive due process guarantees under Article I, sections 1 and 26 of the Pennsylvania Constitution,[11] plaintiff's

---

11. Article I, section 1 of the Pennsylvania Constitution states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of

state constitutional claims under the Pennsylvania Constitution's due process guarantees will also survive the motion to dismiss.

### E. Plaintiff failed to state a claim based upon Article I, section 8 of the Pennsylvania Constitution.

Plaintiff's complaint alleges that defendants violated his civil rights pursuant to Article I, section 8 of the Pennsylvania Constitution. Article I, section 8 is the counterpart to the Fourth Amendment to the United States Constitution. It states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

PA CONST. ART. I § 8.

 States, including Pennsylvania, have "the constitutional power to grant individual rights, including the right to be free from unreasonable searches and seizures, more zealously than the federal government does under the United States Constitution." *Commonwealth v. Beauford*, 327 Pa.Super. 253, 475 A.2d 783, 788 (1984). The Pennsylvania Supreme Court has recognized that Article I, section 8 of the state Constitution provides broader protections than the Fourth Amendment. *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979). In *DeJohn*, the Pennsylvania Supreme Court explicitly stated: "[T]he right to be free from unreasonable searches and seizures contained in Article

[I], Section 8 of the Pennsylvania Constitution is tied into the implicit right to privacy in this Commonwealth." *Id.* at 1291. Article I, section 8 protection extends, however, only to "those zones where one has a reasonable expectation of privacy." *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81, 87 (1988), *aff'd on other grounds sub nom Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). In order to determine whether an activity falls within the right to privacy under the Pennsylvania Constitution, the court must examine: (1) whether the person exhibited an expectation of privacy; and (2) whether that expectation is one that society is prepared to recognize as reasonable. *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287, 288–289 (1994).

In this case, plaintiff failed to demonstrate a protected privacy expectation based upon Article I, section 8 of the Pennsylvania Constitution. Plaintiff alleged in his supplemental brief that "the Defendants' intrusive surveillance methods intentionally interfered with my business to the point that I have ceased most of my operations." (Pl. Supp. Brief at 6). An affidavit attached to the supplemental brief avers that Findlay Township police engaged in "frequent drive-bys" and "surveillance" of plaintiff's property. *Id.* at app. 1. Plaintiff, however, failed to state a claim because there is not a protected privacy interest in property held out to the public. In fact, an observation made from a lawful vantage point outside of any protected area, is not a search, regardless of whether the evidence in open view was located in a protected or unprotected area. *See Commonwealth v. Thomas*, 698 A.2d 85 (Pa.Super.1997). At most, plaintiff's complaint

---

enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Article I, section 26 of the Pennsylvania Constitution states:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

alleges that Findlay Township police and zoning officials had his business property under surveillance. Because plaintiff has no reasonable expectation of privacy regarding property held open to public view, plaintiff fails to state a claim under Article I, section 8 of the Pennsylvania Constitution and that claim will be dismissed.

### F. Plaintiff failed to state a claim based upon Article I, sections 12, 17 and 25 of the Pennsylvania Constitution.

Plaintiff's complaint contains allegations that defendants violated plaintiff's rights under the Pennsylvania Constitution by conducting unreasonable searches of plaintiff's property and violated plaintiff's substantive and procedural due process rights. These allegations fail to state a claim based upon several sections of the Pennsylvania Constitution, including Article I, sections 12, 17, and 25.

#### 1. *Article I, section 12*

Article I, section 12 of the Pennsylvania Constitution states:

> No power of suspending laws shall be exercised unless by the Legislature or by its authority.

The section has no corresponding provision in the United States Constitution, and actually traces its roots back to the English Bill of Rights passed after the Glorious Revolution in 1689. That section stated:

> That the pretended power of suspending of laws, or the execution of laws, by regal authority, without consent of Parliament, is illegal.

I WILLIAM AND MARY sess. 2. c. 2 § i I (1689). Two categories of cases have been brought under Article I, section 12. The first category includes challenges based upon an unconstitutional delegation of legislative power. *See Young v. Fetterolf,* 320 Pa. 289, 182 A. 676 (1936); *In re Baldwin Township, Allegheny County Annexation,*

305 Pa. 490, 158 A. 272 (1931). In the second category are challenges to an action of the executive branch that *de facto* suspends legislation. *See Hetherington v. McHale,* 10 Pa.Cmwlth. 501, 311 A.2d 162 (1973).

In this case, plaintiff failed to allege either an unconstitutional delegation of legislative power or executive action that suspended legislation passed by the Pennsylvania legislature. The issuance of enforcement notices does not constitute suspension of legislation because that action is authorized by the legislature through the Municipalities Planning Code, 53 PA. STAT. ANN tit. 53 § 10616.1 (2003). Thus, plaintiff failed to state a claim pursuant to Article I, section 12 of the Pennsylvania Constitution.

#### 2. *Article I, section 17*

Article I, section 17 of the Pennsylvania Constitution states:

> No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

Nowhere in plaintiff's complaint is there an allegation that any legislative or administrative body of Findlay Township passed legislation or promulgated regulations that interfered with an existing contractual right of plaintiff. Even if it could be inferred that such a contractual right existed, plaintiff failed to allege any substantive law implicitly incorporated into the contract between plaintiff and a third party that was subsequently suspended to his detriment. Plaintiff failed to state a claim based upon Article I, section 17 of the Pennsylvania Constitution.

#### 3. *Article I, section 25*

Article I, section 25 of the Pennsylvania Constitution states:

> To guard against the transgressions of the high powers which we have delegat-

ed, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

The section affirms that Pennsylvania, like other states and unlike the federal government, is a government of general powers, possessing all powers not denied by the state constitution. J. NOWAK, R. ROTUNDA & J. YOUNG, CONSTITUTIONAL LAW 121 (3d Ed.1983). This principle is embodied in the language of Article I, section 25. *See Western Pennsylvania Socialist Workers 1982 Campaign v. General Life Ins. Co.,* 512 Pa. 23, 515 A.2d 1331, 1335 (1986). Commentators have noted that the section exerts "an unconscious influence on the interpretation placed upon the Bill of Rights by the courts." ROBERT E. WOODSIDE, PENNSYLVANIA CONSTITUTIONAL LAW 3 (1985). Despite this "unconscious influence," however, the section lacks any practical importance, "except to add emphasis to the prohibitions laid upon legislative power." THOMAS R. WHITE, COMMENTARIES ON THE CONSTITUTION OF PENNSYLVANIA 171 (1907).

 In this case, plaintiff invokes Article I, section 25 pursuant to allegations of an unconstitutional search and seizure and violations of substantive and procedural due process. Article I, section 25, however, affords plaintiff no independent basis of relief premised on these allegations. As such, plaintiff failed to state a claim based upon a violation of article I, section 25 of the Pennsylvania Constitution.

## G. Plaintiff failed to state a claim for wrongful use of civil proceedings because the state proceedings are ongoing and have not been terminated in plaintiff's favor.

Pennsylvania has codified the common law tort of wrongful use of civil proceedings at 42 PA. CONS.STAT. ANN. § 8351, also known as the "Dragonetti Act". The Dragonetti Act states, in pertinent part:

 **§ 8351. Wrongful use of civil proceedings**

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have *terminated* in favor of the person against whom they are brought.

42 PA. CONS.STAT. ANN § 8351 (emphasis added). The Dragonetti Act contains a clear requirement that civil proceedings must have terminated in favor of the person against whom they were brought. Plaintiff is unable to meet this element, since the underlying enforcement action at the district justice level was appealed to the Allegheny County Court of Common Pleas (Doc. No. 16) and that appeal has not been finally adjudicated. The claim under the Dragonetti Act is not ripe for adjudication at this time.

### Conclusion

**AND NOW,** this fourth day of November 2003, upon consideration of the motion by defendants Christopher Caruso, Gary J. Klingman, Raymond L. Chappell, Jr. and Alan T. Shuckrow (Doc. No. 3) to dismiss the complaint of Raymond Nicolette, and plaintiff's motion to supplement

the civil action complaint (Doc. No. 15), **IT IS ORDERED** that defendants' motion is **GRANTED IN PART** as to all claims except the substantive due process claims founded on the Fourteenth Amendment to the United States Constitution and on Article I, sections 1 and 26 of the Pennsylvania Constitution, and as to those substantive due process claims the motion is **DENIED** without prejudice to the rights of defendants to resubmit the issues under Rule 56 upon a fully developed record. **IT IS FURTHER ORDERED** that plaintiff's motion to supplement the civil action complaint is **DENIED** as moot.